H. T. BAHNSEN, Adm'r of O. A. KEEHLN, v. E. T. CLEMMONS.

*Money Received to Another's Use.*

On the trial below, it appeared that plaintiff's intestate, a postmaster, in June, 1861, had in his hands a certain sum of money belonging to the United States and paid it to the defendant to whom the United States Government was indebted for services as mail carrier, in part discharge of the debt; after the war the defendant collected from the United States payment in full for all his services up to June, 1861, and the plaintiff's intestate was compelled to account for and pay to the United States the amount paid by him to defendant; *Held*, that plaintiff was entitled to recover.

CIVIL ACTION tried at Spring Term, 1878, of FORSYTHE Superior Court, before *Buxton, J.*

The case is sufficiently stated by THE CHIEF JUSTICE in delivering the opinion of this Court. There was judgment for plaintiff and the defendant appealed.

*Mr. J. M. Clement,* for plaintiff.
*Mr. W. H. Bailey,* for defendant.

SMITH, C. J. The plaintiff's intestate, O. A. Keehln for several years prior and up to June the 1st, 1861, held the office of post-master at Salem, and as such had received and then held the sum of three hundred and thirty dollars and twenty-two cents, moneys belonging to the government of the United States. The defendant had entered into divers contracts for carrying the mails, under which there was a much larger sum due him from the post office department.

The balance in the intestate's hands had been from time to time under orders of the department, paid over to the defendant and his receipts taken therefor. The defendant applied to the intestate to pay over this sum to him, and the intestate refused to do so unless directed by the post

office department of the newly formed government of the Confederate States which had then assumed and was exercising control over the mails and post offices in this State. The defendant procured the required order and on presenting it the entire amount was in the spring of 1862 paid over to him by the intestate. After the close of the war and the restoration of the authority of the United States, the defendant made demand and collected from the post office department payment in full for all his services as mail carrier up to June the 1st, 1861, no deduction being made for the sum paid him by the intestate. The intestate has also been compelled to account for the same money and has paid it to the United States. This action is instituted to recover the amount paid to the defendant, as paid without consideration, and in breach of the defendant's contract to apply the same to the debt due him from the United States, and in exoneration of the intestate's liability therefor.

The defendant has thus twice received payment for his services in part, once from the intestate and again from the United States. The intestate has twice paid the money, once to the defendant and next under compulsion to the United States. It is as inequitable for the one to receive and retain the double payment, as it is wrong that the other who has twice paid his money should lose it and be without remedy. The inequality will be corrected and the balance adjusted by the defendant's refunding what he has received and improperly diverted to his own use. This result, in itself so reasonable and just, can be attained upon well settled principles of law applicable to an action for money had and received.

"When the defendant," says Mr. Greenleaf, "is proved to have in his hands the money of the plaintiff which *ex equo et bono*, he *ought to refund, the law conclusively presumes that he has promised so to do*, and the jury are bound to find

accordingly; and after verdict the promise is presumed to have been actually proved." 2 Greenl. Ev., § 104. "The count for money had and received which in its spirit and objects has been likened to a bill in equity, may in general be proved by any legal evidence showing that the defendant has received or obtained possession of the money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff." Ibid, § 117.

The plaintiff's right to recover is resisted on two grounds,— that the payment was voluntary, and that the transaction was itself illegal and the law refuses its aid to either.

It is true the intestate paid the money of his own record, but he did so at the instance of the defendant, and it was to be applied to the discharge *pro tanto* of his claim against the United States. Had the defendant thus applied the money, and this he should have done or offered to do in the settlement of his claims, the intestate would have been relieved of his own liability. By failing to give the credit and collecting his whole debt, he left the plaintiff exposed to the demand of the government, which he was again compelled to pay. This was a breach of the agreement and such a misuse of the fund as entitled the plaintiff to maintain his present action.

We are not able to see any force in the objection founded upon an alleged illegality in the transaction. The intestate simply undertakes to appropriate moneys in hand belonging to the United States to the payment of a recognized debt due by the United States. The act may have been and indeed was unauthorized, but we can discover no trace of illegality in it The indebtedness was incurred under the regular operations of the government in the administration of the mail service, and an attempted though unwarranted adjustment between these parties can in no just sense be affected by the civil commotions in the midst of which it

occurred.  The plaintiff is in our opinion entitled to re-
cover.

No error.                                    Affirmed.