### S. EGERTON v. G. W. LOGAN.

*Attorney and Client—Presumptive Fraud—Statute of Limitations.*

1. The relation of attorney and client is one of a fiduciary character, and gives rise to a presumption of fraud when the former, in dealing with the latter, obtains an advantage.

2. Defendant, an attorney, purchased of his client, (the plaintiff) several notes against an estate at a sum greatly less than their face value, stating to the plaintiff that if he collected in full, he would "do what was right." Thereafter, the defendant did collect the face value of the claims, and the plaintiff, on being informed thereof, called on the defendant for some money and inquired, "Will you not give me any of the money; are you going to keep it all?" to which defendant made no reply; *Held*, that if the indefinite promise to "do what was right," originated a trust as to the sum collected, the subsequent call for money and the defendant's silence amounted to a repudiation of the fiduciary relation and a closing of the trust; whereby a legal, as distinguished from an equitable, cause of action arose, which was barred by the statute in three years after demand.

(*Lee* v. *Pearce*, 68 N. C., 76; *Harris* v. *Carstarphen*, 69 N. C., 416; *Bahnsen* v. *Clemmons*, 79 N. C., 556; *Logan* v. *Simmons*, 1 Dev. & Bat., 13; *Gant* v. *Hunsucker*, 12 Ire., 254; *Wilson* v. *White*, 80 N. C., 280; *Blount* v. *Parker*, 78 N. C., 128, cited and approved.)

CIVIL ACTION tried at Fall Term, 1878, of RUTHERFORD Superior Court, before *Schenck, J.*

The summons in this action was issued on the 9th of September, 1876. The plaintiff alleged that he employed defendant as his attorney and placed certain claims in his hands for collection, some of which the defendant represented to plaintiff he did not believe could be collected; that plaintiff being an ignorant man and unaccustomed to business transactions of this nature, did not know the actual value of. the claims or the probabilities of collecting them; and relying solely on the representations of defendant, he

was induced thereby to sell said claims to defendant at a sum greatly less than their true value and greatly less than the amount afterwards realized upon them by defendant; that in the year 1869, the defendant brought suit on the claims (which were due from an intestate's estate) and compromised the same by receiving a claim due by him to said estate, and got judgment on a certain other debt and collected the money from the administrators of said intestate; that a demand for a settlement was made on defendant, which he refused, and declared that plaintiff had no claim upon him for any sum of money whatever. Wherefore the plaintiff demanded judgment for the sum of $2,213.40, (amount of claims) with interest from the date of the summons.

The defendant admitted that the claims were given him, but alleged it was done under the following circumstances: Plaintiff held the claims for several years, and after the emancipation of the slaves, he brought them to defendant and informed him the notes had been given for the purchase of slaves and expressed great doubt as to whether he would ever get anything for them, and left them with defendant who advised plaintiff to hold on to them. Defendant denied the allegation that he used any unfair means to obtain the claims, or that he deceived the plaintiff, and that in giving the price he did for them, he felt that he was running a great risk of losing his money.

The following issues were submitted to the jury:

1. Was the assignment of the notes procured by fraud? Answer, yes.

2. If the assignment was procured by fraud, did plaintiff discover the facts constituting the fraud more than three years before this action was brought? Answer, no.

3. Was there a demand made on the 13th of December, 1871, by plaintiff on defendant for more money on the promise " to do what was right?" Answer, yes.

The evidence was substantially as follows: Plaintiff testified that in the year 1866 he placed in defendant's hands for collection as an attorney, two notes on John Geer, deceased, dated April 19th, 1862, one for $910, and the other for $882.65, (with small credits on each) which notes were given for slaves; that defendant gave him a receipt for the notes, but he had lost the same; that he could neither read nor write, was ignorant, and generally employed at that time an agent, one John Logan, to transact his business, and by his advice he placed the notes in defendant's hands; that said agent died in 1868, and shortly thereafter the defendant sent for plaintiff to come to his office in Rutherfordton; that defendant was then judge of the superior court, and stated he had not sued on the notes, was doubtful whether they could be collected, being given for slaves, but would give plaintiff $300 for them; that when parties came in, defendant requested them to retire, saying he was on private business, and told the plaintiff " to keep his tongue " about the matter; that owing to these representations and having confidence in the defendant, he assigned the notes to him by the endorsement " pay to G. W. Logan," and signed his name by making his mark, and defendant then paid him $150 in cash and gave his note for the balance, which has been since paid, and defendant said, " if I collect the notes, I'll do what is right."

It was also in evidence that on the first of March, 1869, the defendant issued summons on these notes in his own name against the administrators of John Geer, deceased, and at February special term, 1870, took judgment in pursuance of a compromise and settlement with the administrators as follows: (the facts being agreed on) Defendant owed the Geer estate a note for $1,100, given in 1851, for slaves, which was credited at its face value on the Egerton notes; the administrators also assigned to defendant an insolvent note for $110 on one Bartlett, and defendant took

judgment for the balance due, to-wit, $1,350 ; that subsequently defendant issued execution and sold the Geer estate lands, and on the 16th of August, 1870, received from the sheriff $1,390.50.

It was also in evidence that defendant was counsel for the administrators of the Geer estate, and that one of them refused to submit to the judgment, until defendant, Logan, advised him that he would be obliged to pay the Egerton notes and could not get out of it. That plaintiff, Egerton, after he heard defendant had received the said sum from the sheriff, went on the 13th of December, 1871, and told defendant that he wanted some money ; defendant gave him ten dollars and required plaintiff to give him a note ; that plaintiff then said, " will you not give me any of the money you collected ; are you going to keep it all ?" and defendant gave no answer. That the Geer estate was insolvent, and defendant was solvent in 1869. That the said compromise was made in 1869 or 1870. That a demand to pay what defendant had collected was made on him by plaintiff before suit brought.

The defendant in reply testified that he gave all the information of facts he had to plaintiff in regard to the notes, and his best opinion in regard to the law bearing on their collection ; that the transaction was open, fair and *bona fide;* that he did not send for plaintiff, but that plaintiff before the trade had expressed himself willing to take less for the notes, and that he thought he paid a fair price for them. Defendant denied all allegation of fraud in the transaction. Two other witnesses swore that the war notes for slaves were almost worthless, and that Egerton transacted his ordinary business in the stores, settled his accounts, &c.

The first two issues above set out were submitted by the court and approved by both parties ; the third, by defendant's counsel and assented to by the plaintiff. The statute of limitations was reserved by the court as a question of law

on the issues found and facts agreed upon. There was no exception to the charge to the jury, who responded to the issues as stated above. And thereupon the court held that plaintiff was entitled to have defendant declared a trustee of the fund collected, and that he have judgment for $1,390.50 and interest, subject to a credit of $300, and commissions allowed defendant for collection, &c.

The court also held that the action being one solely cognizable in a court of equity under the former system was not barred by the statute of limitations. Judgment for plaintiff, appeal by defendant.

*Messrs. W. J. Montgomery* and *Merrimon, Fuller & Ashe,* for plaintiff.

*Messrs. Reade, Busbee & Busbee,* for defendant.

SMITH, C. J. The facts disclosed in the pleadings, independently of the finding by the jury, show a case of fraud entitling the plaintiff to relief upon the principle laid down in *Lee* v. *Pearce,* 68 N. C., 76, and *Harris* v. *Carstarphen,* 69 N. C., 416, "that only the known and definite fiduciary relations by which one person is put in the power of another, are sufficient, under our present judiciary system, to raise a *presumption of fraud as a matter of law,* to be laid down by the judge as decisive of the issue unless rebutted." The relation of "attorney and client in respect to the matter wherever the relationship exists" is specially mentioned as embraced in the proposition. The verdict but affirms the presumption as one of fact and establishes the invalidity of the assignment to the defendant, and the formal endorsement by which it is attempted to be effected.

The only question presented in the record, and necessary to be considered, arises out of the defence set up under the statute of limitations, and this in our opinion is decisive of the case.

The moment the defendant collected the claims the money was received by him to the use of the plaintiff and he became liable to account for the excess in his hands above the proper charges and expenses of collecting and the sum advanced at the time of endorsement when the plaintiff on the 15th day of December, 1870, after payment to the defendant, applied to him for the money or some part of it, and the defendant made no answer to the enquiry "won't you give me any of the money you collected; are you going to keep it all?" It was a clear and distinct demand and refusal, which entitled the plaintiff to an immediate action, and at once put the statute in operation. Unless this effect is allowed to his silence and conduct, a party may always evade the consequences of a necessary previous demand by refusing to make a response. The application is for moneys belonging to the plaintiff, then in the hands of the defendant, which it was the legal duty of the latter to account for and pay over, and no excuse is offered for his failure to do so. This is a plain denial of the plaintiff's right and manifests the intention of the defendant to retain the moneys as his own. This result is not affected by the more formal and peremptory demand afterwards made and which met a refusal equally unequivocal and decisive. As the action is not brought within three years thereafter the statute interposes its barrier to the recovery. The form of the demand is not essential to its efficacy. It is sufficient when it serves to inform the agent that the money in his possession is wanted by the principal and affords him opportunity to pay it, and the neglect to do so puts him in the wrong and exposes him to the action for money had and received to the plaintiff's use.

The court below put the plaintiff's claim upon one of two grounds: 1st, an express trust by force of the words, "if I collect the notes I will do what is right," to which the statute does not apply until the trust is closed, or adversary

12

relations assumed between the parties; or 2d, a newly discovered fraud, cognizable alone under the former system in a court of equity as to which the statute begins to run from the time of discovery of the facts in which it consists. C. C. P., § 34 (9).

We find some difficulty in reconciling the findings of the jury upon the second and third issues, since if the demand specified in the last was, and we think it is, legally sufficient, whereby the obligation of the defendant is disowned, the trust repudiated, and the intended fraud consummated, (and its essential and controlling element is the misappropriation of the fund to the trustee's own benefit) we are unable to see why all "the facts constituting the fraud" were not then fully known to the plaintiff within the meaning of the statute. The subsequent is but a repetition of a former refusal, and discloses no new fact not already known to the plaintiff, so that in this aspect of the case the action is also barred.

If the express trust alleged to arise out of the vague and indefinite words used by the defendant at the time of transfer was not determined by the first demand, and the antagonistic relations thereby produced, it is nevertheless manifest that there are concurrent remedies at law and in equity, and hence the case does not come within the saving of the statute. We have already said that the action for money had and received was open to the plaintiff, and in support of the proposition refer to *Bahnsen* v. *Clemmons*, 79 N. C., 556. It lies when "the defendant has recovered or obtained possession of the money of the plaintiff which in equity and good conscience he ought to pay over to the plaintiff."

It is, however, suggested in the argument for the plaintiff, that as the fraud is not in the act of endorsement but in the influence and means employed to procure it, a court

of equity is alone competent to give relief, and therefore the statute begins to run at the date of its discovery.

But this rule applies only to deeds and written instruments under seal, and thus far is supported by the cases cited for the plaintiff. *Logan* v. *Simmons*, 1 Dev. & Bat., 13; *Gant* v. *Hunsucker*, 12 Ire., 254, and other more recent decisions. The rule does not extend to other executed contracts, whether in writing or by parol. We have familiar instances of its operation, where a vendor of goods, even after sale and delivery, retains his property therein and may sue and recover possession, when the sale has been induced by false and fraudulent representations, of which *Wilson* v. *White*, 80 N. C., 280, is the most recent example in our own reports. The sale is treated as a nullity conveying no title, at the vendor's option, as is the alleged assignment under which the defendant claims the notes and the money due on them. In whatever aspect the facts of the case may be viewed, *quacunque via data est*, the plaintiff encounters the same insuperable obstacle resulting from his delay, and the statute which but speaks the voice of the pre-existing law, arrests the prosecution of the cause. *Blount* v. *Parker*, 78 N. C., 128.

We determine the case upon strict principles of law which alone it is our duty to expound and enforce. Yet we cannot refrain from marking our strong disapprobation of the wrong done an ignorant and unlettered client by an attorney to whom he had committed his interests and given his confidence, successful through the influence of fiduciary relations the most sacred, and now beyond redress. But ignorance does not suspend the onward movement of the statute, and the plaintiff's forbearance puts an end to his remedy.

There is error. The judgment must be reversed and judgment entered here that the defendant go without delay.

Error.                                                      Reversed.