DAVISON and BAKER, Trustees v. WEST OXFORD LAND CO.
*et al.*

(Decided May 29, 1900.)

*Specific Performance—Evidence, Fact Found by the Court, Section 590, of The Code—Written Obligation to Pay in a Sale of Land—Counterclaim on Contract, Express or Implied.*

1. Specific performance of contract of sale of land will not be enforced, unless there was a *written* obligation on the part of the defendant to pay for the same.   *Hall v. Fisher* at this term.

2. A preliminary finding of fact by the Judge, of which there is evidence, is not subject to review.

3. Section 590 of The Code does not exclude where the door has been opened by the objecting party.

4. A counterclaim is available if arising upon contract, express or implied.   The law will presume a contract to pay where a party *receives* money and *wrongfully* refuses to pay it over to the rightful owner.

DAVISON *v.* LAND CO.

CIVIL ACTION for specific performance of an alleged contract on part of defendant to purchase land, known as "the Johnson land" near Oxford, tried before *Bryan, J.,* at April Term, 1899, of GRANVILLE Superior Court.

The cause was heretofore tried and reported in 121 N. C., 146.

The issues were found adversely to the plaintiffs, who appealed from the judgment rendered against them.

The case is fully stated in the opinion.

*Messrs. W. A. Devin,* and *A. J. Feild,* for appellants.

*Messrs. A. W. Graham, Hicks & Minor,* and *J. W. Graham,* for appellee.

FURCHES, J.   The plaintiffs claim that as trustees under an assignment of W. A. Davis and N. A. Gregory, for the benefit of creditors of the assignors, they are the owners of a small tract of land lying in and near the town of Oxford, known as the "Johnson land." The "West Oxford Land Co.," is a corporation, and is insolvent. F. W. Carpenter has been appointed its receiver. W. A. Davis, D. C. Hunt, N. A. Gregory and R. W. Lassiter were directors in said corporation.

The plaintiffs allege that they sold to defendant corporation the "Johnson land" at the price of $6,000; that this trade was negotiated with W. A. Davis and R. W. Lassiter representing the defendant corporation; and that said corporation paid $1,028 thereon, evidenced by two drafts as follows: "D. C. Hunt, Treasurer West Oxford Land Co., will pay to John Johnson the sum of ($528) five hundred and twenty-eight dollars on the Johnson land purchased by us. This December 13, 1890."

(Signed) W. A. Davis, R. W. Lassiter, Executive Committee.

45——126

"$500. At ten days sight, pay to order of G. W. Davison and E. C. Baker, trustee, five hundred dollars in part payment Johnson land. Value received and charge same to account of                    "W. A. Davis,

"R. W. Lassiter,

"*Executive Committee.*"

"To D. C. Hunt, Treasurer West Oxford Land Co., Oxford, N. C."

"Accepted—Payable at Bank of Oxford.

"West Oxford Land Co.,

"D. C. Hunt, *Treasurer.*

"June 22, 1890."

"Paid July 10, 1891—Bank of Oxford."

To which there is attached the following: "Oxford, N. C., June 16, 1891. Received of West Oxford Land Co., a draft for $500 in part payment of Johnson land, leaving a balance due of fifty-five hundred dollars to be arranged as follows: Forty-five hundred to be settled for within thirty days after August 18, 1891, and for the remainder one thousand dollars we agree to accept the note of the company, ninety days after August 18, 1891, for one thousand dollars, with not less than ten shares of stock as collateral security, and in the event that said security, at or after the distribution, shall 'equal more than the sum of one thousand dollars, then any excess to be paid over to the directors of said West Oxford Land Company.                    (Signed)        "G. W. Davison,

"E C. Baker,

"*Trustees.*"

These two drafts and the receipt attached to the last draft is what the plaintiffs allege contains the contract of sale and the obligation of the defendants to pay. Upon this alleged contract, and the other evidence in the case, these issues were submitted to the jury:

1. "Did defendant company contract with plaintiffs for the purchase of the Johnson land described in the complaint, at the net price of $6,000?" Answer. "No."

4. "Is defendant company indebted to plaintiffs, if so, in what amount?" Answer. "None."

5. "Are the defendants R. W. Lassiter and D. C. Hunt, or either of them, indebted in their individual capacity to the plaintiffs?" Answer. "No."

6. "Are the plaintiffs indebted to defendant company, if so, in what amount?" Answer. "Yes, $1,028, and interest on the same."

Therefore, there are two propositions contained in this appeal: Did the plaintiffs sell the Johnson land to the defendant corporation, and did the defendant obligate itself to pay for the same; and, secondly, are the plaintiffs liable to the defendant corporation for the amount of the two drafts— one to Johnson for $528, and the other to the plaintiffs for $500?

The jury have found by the first issue that the defendant corporation did not buy the "Johnson land." This is an end to plaintiffs' right to recover against the defendant company, and also as against Lassiter and Hunt, because they could not be bound if the plaintiffs did not sell the land.

Besides the allegation of the defendants that these drafts did not amount to a written contract to sell land, they deny that Lassiter and Davis had any authority from the defendant "corporation" to make and enter into such a contract, and that said corporation did not know that such a contract had been attempted for many months after, and that the same was never approved or ratified by the corporation.

The plaintiffs offer pages 9, 11, 13 and 15, of the Minute Book of the corporation, which they allege show the approval of this transaction and purchase by the defendant corpora-

DAVISON *v.* LAND CO.

tion.   The defendants object to this evidence upon the ground
that it is no part of the minutes of any meeting of the cor-
poration; that there was no meeting when they were made;
that they were in the handwriting of W. A. Davis, who was the
agent of the plaintiffs in trying to effect a sale of this land,
and were not a part of its minutes.   The objection was sus-
tained, and the plaintiffs excepted.

We think there was evidence from which the facts, stated
in the defendant's objection, might have been found to be
true; and, as the Court sustained the objection, we must sup-
pose that the Court found these statements of defendants to
be true.   And whether they were in fact true or not, we have
no right to review the Court upon a finding of fact in the
trial of a cause.   If the allegations of the defendants were
true, as we must take them to be from the ruling of the
Court, it is clear this evidence was incompetent, and should
not have been received.

There is another exception to the evidence of the defend-
ant Lassiter by the plaintiffs.   This evidence does not seem
to bear upon the issues now under consideration.   But we
do not think it can be sustained, if it does.   This objection
is with regard to a conversation between Lassiter and W. A.
Davis who was one of the original defendants, but dead at the
time of the trial; and this evidence is objected to under sec.
590, of The Code.   If Davis was represented in this case
after his death, the record fails to show it; and there seems to
be no one claiming through or under him except the plain-
tiffs.   But more than this, the plaintiffs had before this
introduced similar evidence of conversations with Davis and
the defendant Lassiter, and in this way opened the door, if
there had been anything in the plaintiffs' objection.   This
disposes of the plaintiffs' right to specifically enforce the con-
tract of sale, as there was no contract to enforce.

But it seems to us that there is another clear reason why the plaintiffs could not succeed, admitting that the drafts contained a contract for the sale of the Johnson land which might have been enforced. They contained no *written* obligation on the defendant corporation to pay, as was necessary in a sale of land. *Hall v. Fisher,* at this term, and authorities there cited.

As we have seen that the plaintiffs can not recover, it remains to be seen whether the defendant corporation can recover of the plaintiffs the amount paid by it on the two drafts—one to Johnson and the other to plaintiffs, amounting to $1,028 and interest.

The defendant corporation makes this by way of counterclaim. We are of the opinion that it can not.

When this case was before the Court at September Term, 1897 (121 N. C., 146), it was held that the money paid on the two drafts did not constitute a counterclaim growing out of the sale of land, as there had been no sale. And as it is held now, as it was then, that there was no sale, the proposition then stated by the Court is true now if it was then. And we see no error in this statement, and no reason for reversing what was then said.

But while this is true, the defendants may set up **and** maintain a counterclaim that does not grow out of the contract sued on, if the counterclaim be a cause of action arising upon contract. And where one party has received money to which *another is entitled,* the law presumes a contract if it is necessary to do so to enable the party entitled to recover the same. *Board of Education v. Town of Henderson,* at this term. This entitles the party having the right to the money, to an action of debt, *indebitatus assumpsit,* which, though an action at law, was equitable in its nature. It has been styled "an equitable action on the law side of the docket." But it

arises only where the money was received and held under
such circumstances that the law will imply the contract—
where it would be inequitable and unconscionable for the
party receiving the money to hold it, amounting to a moral
fraud to do so, it will usually be so held. Where one person
receives money belonging to another and wrongfully refuses
to pay it over, the action will lie. But to make him liable, he
must *receive* the money and *wrongfully* refuse to pay it over
to the party to whom it belongs.

The plaintiffs never *received* the money on the $528 draft.
The draft was made payable to John Johnson, and the money
paid to him. Whether he could be held liable for it or not, is
not a question before us. But we fail to see how the plain-
tiffs can be held liable for the money paid on this draft to
Johnson.

The $500 draft was drawn payable to the plaintiffs and
collected by them. This distinguishes it from the $528 draft
drawn payable to Johnson and collected by him. And the
plaintiffs' liability depends upon the fact as to whether it is
unconscionable for them to refuse to pay the defendant
corporation this money, or not. Whether it is *wrongful* for
them not to do so; if it is, the law will presume the contract
—presume that they agreed to do so, and will not allow
them to disprove this presumption. The fact that the plain-
tiffs received this draft ($500) and received the money on it,
is not disputed. But how did they receive it, and for what
purpose? Not wrongfully, nor as their money. They re-
ceived it as the assignees of Davis and Gregory, for the
benefit of the creditors of Davis & Gregory; and it must
be presumed that it has long since been paid over to such
creditors. This is the presumption, and no evidence has
been offered to rebut it. While on the contrary, it appears
from the evidence (the correspondence between Davis and

plaintiffs) that Davis was urging the sale of this land in order that "the long deferred third-class creditors might be paid."·

Then, if the plaintiffs received this money as assignees —trustees—for the benefit of the creditors named in the deed of assignment to them and have paid it over, as we must presume they have, can it be inequitable and unconscionable in them not to take their own money and give it to the defendant corporation, which has at least been guilty of culpable negligence in paying $500 on land that it had never bought ? We do not think the case of *Bahnsen v. Clemmons,* 79 N. C., 556, cited by the learned counsel of defendants, sustains the defendants' right to recover back this money. The argument in that case we think tends to sustain the views we have expressed.

There are some other exceptions taken by the plaintiffs, which have been examined and can not be sustained, or do not apply to the matters involved in this appeal.

We are therefore of the opinion that the plaintiffs can not recover, and that there is no error in the judgment as to the plaintiffs' right of action.

We are also of the opinion that the defendant is not entitled to recover on its counterclaim, and there is error in the judgment of the Court as to that.

The judgment is, therefore, affirmed as to the plaintiffs' cause of action, and reversed so far as it gives the defendants judgment on the counterclaim. Let this be certified to the court below that proceedings may be there had in accordance with this opinion.

The costs of this Court will be divided between the parties.