JOHN B. McRAE *et al. v.* KEMP P. BATTLE Ex'r *et al.*

If a husband obtain from his wife a provision in his favor much more beneficial
    to him than that which was stipulated for him in an antenuptial marriage
    settlement, it comes within the principle applicable to other intimate fidu-
    ciary relations, and raises a presumption of fraud unless rebutted by evi-
    dence to the contrary.

The rule that a person cannot take advantage of an allegation of frand, unless
    it be made in the pleadings, does not apply to a case agreed where all the
    facts are stated, and the matters of law or legal inferance left to the Court.

The case of *Lee* v. *Pearce,* 08 N. C. Rep. 76, cited and approved.

This was a CONTROVERSY without action, submitted to
Watts, *J.,* upon the following facts agreed, to-wit:

1. Cameron F. McRae and Julia T. Burgwyn in contemplation of a marriage to be solemnized between them on the 29th day of December, 1839, entered into a marriage contract or agreement, the material parts of which are as follows: All the property of the intended wife is conveyed to trustees; first, for her use until the marriage; second, she reserves the right to make provision out of the property for her father; third, the husband is to receive during his life all the rents and profits for the joint use of himself and wife; fourth, if she shall outlive her husband, then to the sole and absolute use of herself and her heirs, &c.; fifth, if the husband shall outlive his wife, then after his death, for the use of such persons, for such estates, &c., in such proportion, &c., subject to such changes as the wife shall by any last will or writing in the nature of a last will, direct, limit or appoint, in this case she having absolute power, &c., and the trustees to hold, convey, &c., as she may appoint; and she may execute this power by deed, with the assent of her husband; sixth, in default of such appointment, if she shall have children, which shall outlive her said husband, then for the children living at his death; in default of children, then to her father, brothers and sister.

2. Thereafter the said marriage was solemnized, and on the 26th of April, 1842, the said Cameron F., and wife, Julia T., conveyed by deed to John Burgwyn the property mentioned in said marriage settlement for the following purposes: first, the husband to have complete control of the property during the joint lives of himself and wife, he to use it as his own; second, upon the death of the husband, if his wife survive him, then the whole of the principal of the property to return to her as if she had never been married; third, but if the husband survives, then he is to be entitled to one-half of the principal, and hold the same to him and his heirs free of all trust; and the other half he shall hold upon certain trusts, &c.; fourth, the second half

he shall hold, if his wife shall not otherwise appoint for himself and his heirs, &c.; but his wife may appoint as she will as to this half, and he will carry into effect her directions, &c.; fifth, provides that the trustees shall convey to the said John Burgwyn.

3. And thereafter, on the 27th day of April, 1842, the said John Burgwyn reconveyed the same property, for certain purposes mentioned in the said deed to the said Cameron F. McRae, to-wit: the same trusts, &c., as those provided in the deed to him from the husband and wife.

4. That thereafter the said Julia T., wife of the said Cameron F., made her last will and testament with certain codicils, which upon her death was duly admitted to probate in the State of Pennsylvania, on the 13th day of August, 1853, and the said Cameron duly qualified as executor to said last will and testament. The will bears date the 11th Feb., 1846; and, first, ratifies and confirms the deed she and her husband made to John Burgwyn, and make it part of her will; second, she gives *one-half* of her property to her husband; giving him power to dispose of absolutelly $6,000 of this half; and as to the other half she gives small sums to Miss Nash and Mrs. Nash, and the residue thereof to her children, &c., and in default of children to her brothers and sister.

The first codicil is dated 11th day of February, 1846, and makes provision for her brothers and sister, and regulations as to how they shall enjoy, &c., if the property shall go to them.

The second codicil is dated the 14th May, 1853, and provides: first, that the item of $6,000 in her will shall stand as therein specified, and revokes the legacies to Miss and Mrs. Nash; second, she says "all the rest and residue of my estate, real, personal and mixed, I give and bequeath to my beloved husband during his life, and after his death to my children and their heirs in equal parts." If her children is

without issue she gives it to her sister Emily Burgwyn and her heirs.

5. That thereafter the said Cameron F. McRae, on the 2d day of April, 1870, made his last will and testament, and on the 1st day of August, 1872, died and thereupon his said will was duly admitted to probate, and thereupon the defendant, Susan, the sole executrix therein named, qualified as such and took into her possession certain bonds and notes, representing, in part, the trust fund originally conveyed in the aforementioned marriage settlement.

The will of Cameron F. McRae, dated 22d April, 1870, first, gives his wife Susan certain property in Fayetteville, subject to a change; second, all the rest and residue of his estate, (which includes all he obtained from his first wife) he gives to his wife Susan for life, and after her death to all his children ; but if he cannot do this, then he gives her the $6,000 for life, and after her death to his children by her; third, if he. has power to dispose of the one-half got from his first wife, then he gives to his second wife $6,000 for life, and then to his children by her, and the residue of this half to all his children, &c. ; fifth, the rest of his estate, with some trifling exceptions, he gives to his second wife absolutely.

6. The plaintiffs are the only children of the marriage of the said Cameron and Julia, and the defendant, William P., Julia T. and Edward M. McRea are the children of the said Cameron and Susan.

7. After the death of the said Julia, the said Cameron gave to his children, the plaintiffs, such sums of money as were necessary for their support and maintenance, and took no receipts for the same, and made no charges against them for the sums so given, and did not at any time inform them that the money so given them belonged to them of right as a part of the said trust fund, but on the contrary,

informed them that the said sums so given were a donation from himself to them.

8. The said Cameron made no account nor return, either as executor of the will of the said Julia, or as trustee under the deeds, in the Court where letters testamentory were granted to him, nor in any other Court as far as can be ascertained.

Upon this state of facts the plaintiffs insisted that they were entitled to the whole of the fund share and share alike, except the sum of six thousand dollars.

The defendants insisted, on the contrary, that the defendant, Susan, is entitled during her life to one-half of said fund, and at her death that the defendants, William P., Julia T. and Edward M. are entitled to six thousand dollars of the said one-half, and the residue of the said one-half is to be equally divided between the plaintiffs, John B. and Catharine, and the defendants, William P., Julia T. and Edward M. share and share alike. After the case agreed was made up, the defendant, Susan McRae, died, leaving an infant son, who was born after the death of his father, and her executor, Kemp P. Battle, and the said infant were made parties defendants.

His Honor being of opinion with the plaintiffs, gave judgment accordingly, from which judgment the defendants appealed.

*Battle & Son.,* for the defendants, of whom *R. H. Battle, Jr.,* filed the following brief on the question of fraud, being presumed from the deeds of 1842:

1. In this case there is no allegation or suggestion of fraud. Courts of Equity will not give relief on the ground of *fraud,* unless fraud is distinctly alleged, *McLane* v. *Manning,* Wins. Eq. 60, *Witherspoon* v. *Carmichael,* 6 Ired. Eq. 143.

2. That the wife may give her separate property to her husband on the ground that she is a *feme sole* as to such property. All the writers agree with Roper on Husband

and Wife, (32 Law Lib. 220), McQueen on Husband and Wife, (66 Law Lib. 297), Sch. Dom. Relations, 226, Clancy on Rights of Husband and Wife, 347.

3. In *Grigby* v. *Cox,* 1 Ves. Sen. 578, Lord Hardwick says that though (in regard to such transactions between husband and wife alone) a Court of Equity will regard them more jealously, and if there is any proof that the husband had any improper influence over the wife by ill or even extraordinary good usage to induce her to it, the Court might set it aside, but not without that. So other cases cited in Clancy on Rights, &c., 348 to 350. In *Rich Crocket,* 9 Ves. Jun. 369, no doubt was expressed of the validity of the gift by wife to husband, and the question was whether there was evidence of such gift; and in *Parkes* v. *White,* 11 Jun. 222, Lord Eldon says a wife may give her separate property "to her husband as well as to anybody else; that the cases never intended to forbid that; and that if he conducts himself well, his Lordship did not know that she could make a more worthy disposition of it, though certainly the particular act ought to be looked at with jealousy."

4. Here if the Court is inclined to look with jealousy at the transaction embraced in the deeds of April, 1842, we suggest as a complete answer to the difficulty, first, that the gift left her ample provision, and he received only part of what the law would have given him by the marriage, without the settlement, and which she reserved to herself power to give him (or to anybody else) after her marriage by deed, if she saw proper; second, that she never complained of said deed in her lifetime as a fraud upon her rights, nor has it been attacked as fraudulent since her death, either by the next friends of her children, or by them since they became of age several years ago; third, that the other party to the deeds was the father of the wife, whose right and duty it was to protect his daughter, and his grandchildren by her.

5. The case of *Lee* v. *Pearce,* 68 N. C. Rep. 76, is not directly

in point, because the relation of husband and wife is not one of those there discussed; but if it were in point, the circumstances attending the transaction here (as above) rebut any presumption of fraud, and place the burden on the other side, if fraud be alleged.

6. We suggest whether, in the absence of the charge of fraud, those representing the estate of the deceased should be required to meet a suggestion of fraud after the death of all the parties to the transaction—husband, wife and father of wife—and after all concerned have acquiesced for many years, by silence at least, in the transaction.

*A. S. Merrimon* and *J. C. McRae*, for the plaintiffs.

PEARSON, C. J.    The last will and testament of Mrs. Julia McRae called a second codicil, is a plain, direct and well written instrument, which makes a reasonable disposition of her estate under the power set out in the marriage settlement without verbiage or circumlocution.

By it the legacy of $6,000 given absolutely to her husband is confirmed, and all the rest of her estate is given to her husband for life, and then to her children and their heirs.

The life estate having fallen in, her children now claim all the rest of the estate, save the $6,000. We concur with his Honor in the opinion that they are so entitled. The will of the 11th of February, 1846, presents no difficulty, for the last will not only makes it by implication, but contains an express clause " revoking all and every part of former wills as inconsistent herewith, " showing that the good lady had become aware that she had fallen into some confusion and inconsistency in regard to the prior disposition of her estate.

The only difficulty is presented by the deed of McRae and wife to John Burgwyn the 26th of April, 1842. This

deed purports to be made in pursuance of the power given in the marriage settlement and in execution of that power ; besides the life estate which the marriage settlement allows to the husband, this deed in case he survives his wife gives to him an absolute estate in one-half of the whole fund, and an absolute estate in the other half " should the said Julia not see fit to dispose of it to any other person or persons by writing in the nature of a will. "

We are of the opinion that this deed, so far as it seeks to " *modify* " and change the provisions of the marriage settlement in favor of the husband and to give to him an absolute estate in the whole or in one-half of the principal of the fund, is inoperative and of no effect.

We put our opinion on two grounds. 1. The condition of the parties and their surroundings, and the words of the marriage settlement show that the purpose was to allow the wife in case there should be no issue of the marriage to appoint in favor of her brothers and sister or any of them, which right in respect to her father is expressly provided for by the deed of marriage settlement, the husband being content with the unrestricted right to dispose of " the rents, issues and profits of the whole estate during their joint lives, and during his own life if he survived. Upon this general view it would seem that the husband was not contemplated as an object of the power of appointment under the deed of marriage settlement.

The peculiar wording of the instrument adds force to this conclusion, " and if it shall so happen that the said Cameron shall out live the said Julia, then, from and *after* the *death* of *said Cameron* for such person or persons as the said Julia may by writing in the nature of a will appoint." The idea that the wife should appoint the husband as a person to take the estate from and after the death of the husband involves an absurdity, and shows that the husband was not in the contemplation of the parties to be an object

of the power of appointment, and the purpose was to enable the wife on failure of issue to provide for her brothers and sister, it being assumed that the husband was amply provided for by his right to all of the rents and profits free of account during his lifetime.

The other clause in the deed of settlement adds force to this view of its construction " or the said Julia may execute this power of appointment by deed, *in that case having the assent of the said Cameron ;*" if the objects of the appointment were to be some person or persons other than the husband, this was a reasonable and prudent precaution in restraint of an excessive liberality on her part towards the members of her own family, but if it was intended to include the husband as one of the objects of the power then this veto power of the husband involves another absurdity, to wit : that of enabling him to prevent the exercise of the power of appointing by deed unless the whole estate or one-half of it should be given to him as the price of his assent.

2. This deed falls within the principle announced in *Lee* v. *Pearce*, 68 N. C. Rep. 76, that in certain fiduciary relations if there be dealing between the parties on the complaint of the party under the influence of the other, the relation raises a presumption of fraud which annuls the act unless such presumption be rebutted. "The doctrine rests on the idea not that there *is* fraud, but that there *may be* fraud, and gives an artificial effect to the relation beyond its natural tendency to produce belief. The doctrine was adopted from motives of public policy to prevent fraud as well as to redress it, and to discourage all dealing between parties standing in these fiduciary relations." On this policy *femes covert* are incapacitated from devising land under the statute 32, Henry 8th. The danger of influence by the husband to produce a devise in his favor.

In the case of *Lee* v. *Pearce*, the instances stated are trustee and *cestui que* trust, attorney and client, and guardian

and ward, but the principle applies with greater force when, as here, a fiduciary relation exists between husband and wife under a deed of marriage settlement, and in some two years after the marriage the wife in executing a power in favor of her father which was provided for in the deed of settlement is likewise inclined to modify and change the provisions of the deed of settlement so as to give the husband an absolute title to one-half of her estate in the event of his being the survivor and a contingent title to the other half. There is nothing to rebut this implication of law; on the contrary, there are circumstances which it is not necessary to set out tending to indicate it. The position taken by the counsel of the defendants on the argument that the question growing out of the fiduciary relation of the parties is not presented by the pleadings is untenable. This is " a case agreed;" all of the facts are set out, and the matters of legal inference left to be made by the Court. It was not necessary in " a case agreed " for the plaintiffs to make a direct charge of fraud against their father or to aver that he contrived by the deed to John Burgwyn the 26th of April, 1842, if allowed to take effect to pass to his second wife and her children the larger part of the estate of his first wife, who was the mother of the plaintiffs.

No error.

Per Curiam.                    Judgment affirmed.