LOUISE B. SMITH v. SUSAN E. MOORE.

(Filed 19 November, 1908).

1. Deeds and Conveyances—Fraud—Transactions With Deceased Persons—Place of Signing—Harmless Error.

When there is no controversy as to the fact, and it is immaterial to the issue and non-prejudicial, where the deceased was when he signed a deed, in an action attacking its validity for fraud, admission of evidence that it was signed in bed is not reversible error, upon the ground that the testimony concerned a transaction between the witness and the deceased.

2. Deeds and Conveyances—Evidence—Declarations Explanatory of Possession—Res Gestae.

While the issue of fraud is one to be passed upon by the jury, in an action wherein the validity of a deed is attacked on that ground, declarations that the deed was procured by fraud, when qualifying and explaining the possession and made by the party in possession of the lands claiming them as his own at the time demand therefor was made, are competent as a part of the *res gestae*, the fact of possession, though incompetent as evidence of the alleged fraudulent fact, or as an opinion of how the deed was obtained.

3. Appeal and Error—Brief—Exceptions Abandoned.

An exception appearing of record but not referred to in the appellant's brief, is regarded as abandoned on appeal.

### 4. Evidence, Hearsay—Exceptions to Rule—Requisites.

Parties relying upon an exception to the rule that hearsay evidence is inadmissible, must show affirmatively the existence of all facts necessary to bring the secondary evidence clearly within the exception.

### 5. Same—Evidence.

In order for a party to introduce in evidence stenographer's notes of the testimony of a witness taken at a former trial, it is encumbent on him to show the facts, upon which he relies, as to his being unable to procure the attendance of the witness, or have his deposition taken; and a doctor's certificate, merely to the effect that the witness is too unwell to attend the trial, without having shown previous notice to the opposing party, or without making it appear that the sickness is of a permanent character, is insufficient to bring the evidence within the exception to the general rule that hearsay evidence is inadmissible.

### 6. Principal and Agent—Deeds and Conveyances—Delivery—Possession—Registration—Fraud.

A deed made by an agent, having general control or supervision of his principal's property, to his principal, found in the agent's safe after his death, unregistered, but among other papers, monies, etc., of the principal, without other proof of constructive or actual possession of the principal, would not be a valid delivery, when there was no special authority to the agent to accept the deed in behalf of the principal; and the failure to register was a circumstance to be considered by the jury upon the question of fraud.

### 7. Principal and Agent, Transactions Between—Fraud—Presumption—Burden of Proof.

When one is the general agent of another, who relies upon him as a friend and adviser, and has entire management of his affairs, a presumption of fraud, as a matter of law, arises from a transaction between them wherein the agent is benefited, and the burden of proof is upon the agent to show by the greater weight of the evidence, when the transaction is disputed, that it was open, fair and honest.

ACTION tried before *Neal, J.,* and a jury, Fall Term, 1908, of NEW HANOVER.

This cause has been before the Court in two appeals and will be found reported in 142 N. C., 277 and 145 N. C., 269. On both appeals the Court granted a new trial for error in the conduct of the trial and form of the verdict. The subject

matter of the litigation is set forth in the appeal, reported in
142 N. C., 277, rendering it unnecessary to repeat it at this
time.    Reference may be had to the statement made by Mr.
Justice Walker, 142 N. C., 277.    The cause was brought to
trial for the third time before Judge Neal and a jury, when
a verdict was rendered for plaintiff.    Several exceptions were
taken to his Honor's rulings upon the admission and rejection
of testimony, and to instructions to the jury.    Those not aban-
doned in the brief are referred to in the opinion.

From a judgment upon the verdict the defendants appealed.

*John D. Bellamy* for plaintiff.
*Bellamy & Bellamy, Rountree & Carr* and *H. McClammy*
for defendant.

CONNOR, J.    The issue submitted to the jury upon the
pleadings presented the question whether the deed executed
by plaintiff and her mother, Mrs. Mary E. Smith, was pro-
cured by fraud.    The defendants claim the property as the
widow and heirs of Roger Moore, the grantee.    It is conceded
that every person present at the execution of the deed, except
plaintiff and Alcenia Reed, are dead.    Plaintiff was intro-
duced in her own behalf, and testified, without objection,
that, at the time she executed the deed, she was sick—was
very ill with typhoid-pneumonia—from February to April,
1885, the date of the deed being 4 March, 1885.    She was
asked: "Where were you when you signed the paper?" to
which she responded, over defendant's objection, "In the bed."
Defendants excepted.    The ground of the exception is that
the testimony concerned a transaction between witness and
the ancestor of defendants, the grantee in the deed.    It was,
in regard to the matters in controversy, entirely immaterial
whether plaintiff was sitting on a chair or lying on a bed
when she signed the deed.    We do not perceive how the fact
could throw the slightest light upon the issue or prejudice
the defendants.    While we do not think that the testimony

comes within the spirit or the language of the statute, Revisal, sec. 1631, as a communication or transaction with the deceased grantee, if it did we should not deem its admission ground for granting a new trial—it is clearly non-prejudicial. The witness Alcenia Reed, who was present, testified, without objection or contradiction, that plaintiff was "in the bed" when she signed the deed. There was no controversy in regard to the fact. The exception cannot be sustained.

After the execution of the deed, plaintiff and her mother continued to reside upon the property until the latter died. Plaintiff remained there undisturbed by Col. Roger Moore during his life. Some time after his death, Henry Moore, sometimes referred to as Roger, one of the children of Col. Roger Moore, and one of the defendants, went to the home of the plaintiff and demanded possession, or that some arrangement, in regard to the rent, be made. After testifying in regard to the conversation between Henry Moore and herself, plaintiff was asked: "What claim did he set up to the property—what did he say to you and what did you say to him?" She answered, over defendant's objection, "He said he had a deed for the property and I told him if he had, he got it by fraud." Defendants excepted. Of course, it would not have been competent, as substantive evidence, for plaintiff to say that defendants' ancestor procured the deed by fraud. That was the very question to be decided by the jury. She could not state, either as a fact or as an opinion, how the deed was obtained. We do not understand that the question was asked or permitted to be answered for any such purpose. It was clearly competent for her to give her version of the conversation between herself and Henry Moore, one of the defendants, when he claimed the property and demanded possession. It may have been proper for his Honor to have stricken the answer from the record. It was saying nothing more than she had alleged in her complaint, and could not, in the light of the instruction given by his Honor,

upon the issue, have misled the jury. The case was made to depend largely upon the presumption of fraud arising out of the relation of the parties. His Honor, in view of the opinion of the Court on the former appeal, carefully excluded any testimony from plaintiff in regard to the transaction between Col. Roger Moore and herself. No reference was made in the conversation with Henry Moore to the circumstances attending the execution of the deed. It is the well settled rule that when one is in possession of land, his acts and declarations qualifying and explaining such possession, are competent as part of the *res gestae,* that is, the fact of possession. Henry Moore was making claim that he owned the land, had a deed for it—demanding that she surrender possession. She simply said: "If you have a deed, you got it by fraud." We cannot think this language constitutes prejudicial error.

The record contains an assignment of error directed to the testimony of plaintiff that she made a will. It is not referred to in the brief and is, therefore, under the rule to be regarded as abandoned.

"Counsel for defendants offered to read, in evidence, the testimony given on the last trial by Mrs. Sarah J. Wilson, upon the presentation to the Court of a doctor's certificate that Mrs. Wilson was too unwell to attend court, for that the evidence (stenographer's notes) was what the witness testified to at last trial. The Court was of the opinion that the evidence was not competent, even though it should be made to appear that the witness was sick, and also that the evidence offered was what she said at a former trial. It was excluded upon plaintiff's objection, and the defendants excepted."

It would have been more satisfactory and better practice for his Honor to have found the facts in regard to the physical condition of Mrs. Wilson, how long she had been sick, the character of her sickness, its probable duration, whether known to defendants and, if so, whether it was practicable

to have taken her deposition. This would have enabled him to pass upon the admissibility of her testimony given on the former trial, preserved by the stenographer's notes, as a question of law, and, upon appeal, we could have reviewed his conclusion. His finding of fact would have been final, as in cases of dying declarations, etc. To say that a witness is "sick" or "unable to attend court" is indefinite, and by no means determinative of the admissibility of her former testimony as original substantive evidence. The general rule excluding hearsay evidence is too well settled upon reasons too obvious to justify a discussion or citation of authority. Experience has demonstrated the necessity of some exceptions to the rule. Statutory provisions have been made for taking depositions and prescribing the conditions under which they may be substituted for oral evidence before the jury. The Courts have, with caution, and, because of necessity, made other exceptions. Some of these are as well settled as the rule itself. The testimony of a witness who, since his examination, has died, become insane, or otherwise non-available, may be introduced upon a second trial, provided, it has been preserved or notes taken thereof, or some person who heard the witness testify can reproduce it. There are other exceptions not necessary to be considered in this connection. Illustrations of the exceptions, so far as they have been applied by this Court, will be found in *Jones v. Ward,* 48 N. C., 24, where an attorney who took notes of the testimony on the first trial was permitted to testify to what the deceased witness swore. This ruling was followed in *Wright v. Stowe,* 49 N. C., 516; *Ashe v. DeRossett,* 50 N. C., 299; *Carpenter v. Tucker,* 98 N. C., 316. In this class of exceptions the non-availability of the witness is manifest, the only question being as to the mode of preserving and reproducing the testimony. The Courts have also made an exception when the witness has gone beyond the jurisdiction of the Court without the procurement of the party offering his former evidence,

.and he has no means of taking his deposition, or when the witness is sick; and probably still others not material to this discussion. In this last class of exceptions the party offering the testimony must, as a condition precedent to its admission, show the necessity for the exception based upon the non-availability of the witness, either in person or by deposition, and that he has used due diligence in endeavoring to secure his attendance or .take his deposition. "In case of disa-·bility, other than death, it has been held that the Court must be satisfied that the party has used due diligence to obtain the personal attendance of the witness." 1 Elliott Ev., sec. 517. We do not find that the question involved in this case has been decided in this Court. In other jurisdictions it has received careful consideration and has, we think, been settled upon sound principle and safe policy. In *Wabash R. R. v. Miller,* 158 Ind., 174, *Hadley, J:,* says: "The admissibility of such evidence constitutes an exception to the general rule of exclusion of hearsay evidence, and rests upon a kind of legal necessity springing from an apparent impossibility or .impracticability of procuring the testimony of the person ·from whom the information emanates. It is, therefore, in-cumbent upon the party offering such testimony to show affirmatively the existence of all facts necessary to the bring-ing of the secondary evidence clearly within the exception, and, unless this is done, the evidence should be excluded." In this case the witness was temporarily absent from the State. No reason being shown why his deposition was not ·taken, his testimony upon a former trial was excluded. In *Seifert v. Seifert,* 123 Mich., 664, *Grant, J.,* says: "I find ·no authority which holds temporary illness is sufficient to ·justify the reading of the testimony taken upon a former ·trial. When the illness is only temporary, certainly the oppo-·site party should be allowed the choice to consent to a con-·tinuance or to the introduction of the former testimony. · * * * The only safe rule is that the illness must be of

a permanent character." In *Berney v. Mitchell*, 34 N. J. L., 337, we find a well considered discussion, citing English and American cases, by *Dalrimple, J.* He says: "It must be recollected that the rule by which the evidence of a deceased witness, given on a former trial, is admitted, is an exception to the rule rejecting all hearsay evidence * * * . In my opinion, neither legal principle nor sound policy will justify the admission of the evidence given on a former trial, except in case of the death or insanity of the witness, or when it appeared at the time of the trial, by reason of physical inability of a permanent character he is unable to be examined and that, by the exercise of due diligence, his deposition could not have been taken." We quote this language to show how cautiously the most respectable courts in this country have proceeded in extending the exception to the general rule. In *Miller's Case, supra,* the Court, referring to the use of stenographer's notes, says: "It is suggested that since the employment of stenographers in court and when testimony which has been sifted and its truth tested by cross-examination, under the supervision of the Court, has been preserved by it, the reasons previously existing for diligence in procuring the evidence, direct from the original witness for use upon a retrial, have ceased to exist, and that evidence so preserved can no longer be looked upon with distrust. But the suggestion does not go to the bottom of the question. A witness may never be more honest in giving his testimony, yet, after the lapse of time and increase of knowledge, he may desire to modify or altogether change the statements made by him as a witness in the case; and the adverse party may desire to cross-examine the witness more at length, or upon new points and may be able thereby to change materially the probative force of the testimony previously given; and grounds of successful impeachment may be discovered after the former trial, which would be made available by presenting to the adversary party an opportunity to lay the founda-

tion. These and other like considerations are not affected by the art of stenography, however perfect it is or may become. It is clearly the duty of the Court, when engaged in the administration of justice, to see to it that the best and most reliable evidence obtainable is brought before it, and this can only be accomplished by requiring, as far as reasonably possible, the examination of the witnesses from the stock of knowledge possessed by them and the parties at the time of the trial." The stenographer's notes, while doubtless accurate, do not have the degree of "circumstantial trustworthiness" which Prof. Wigmore regards as essential to the admission of secondary or hearsay evidence, which a deposition, carefully taken by a commissioner, read over to and signed by the witness, possesses. When a deposition is taken the opposite party is put upon notice that it will probably be offered in evidence, and he is given an opportunity to prepare for trial in view of this fact. We think that, upon the authority of the decisions cited, and upon principle, the defendants did not show to the Court either the legal necessity for admitting the notes of Mrs. Wilson's testimony on the former trial, or that they had used due diligence in securing her deposition, or, if the exigencies of the case rendered this impossible, asking for a continuance of the cause. It was but just to the plaintiff and conducive to the due administration of justice that, in some way, the plaintiff should have been notified that the witness would not be present to testify and that the stenographer's notes would be offered. We place our decision upon the general rule and the exception, subject to the limitation put upon it, and not because we have any thought that the learned counsel for defendants were not acting in perfect good faith in offering the testimony. To enlarge the exception or relax the conditions upon which it may be invoked would endanger the integrity of the rule itself and the rights of parties in trials before juries. *State v. King,*

86 N. C., 603, does not conflict with the conclusion reached by us.

While not next in order, we deem it convenient to consider the exception and assignment of error pointed to his Honor's charge upon the contention that Col. Moore, the grantee, executed and delivered to Mrs. M. E. Smith and plaintiff a lease of the property for their joint lives and the life of the survivor. The plaintiff introduced a paper writing signed by Roger Moore, bearing date of 15 March, 1885, leasing to plaintiff and her mother the property in controversy, reserving a nominal rent. The testimony showed that this paper was in the handwriting of Mr. Cutler, who drew the deed of 4 March, 1885. It was witnessed by him and admitted to probate, and registration by defendants 11 April, 1907, upon proof of his handwriting, he having died prior thereto. The evidence tended to show that Col. Moore was the general agent of Mrs. Smith, and that he kept in his possession, as such agent, her papers; that it was the purpose of Mrs. Smith to reserve, in said property, an estate for the life of herself and her daughter, the plaintiff, and of the survivor. The evidence tended to show that, some time after the death of Col. Moore, the lease was found in his iron safe, in a bundle of papers in an envelope. The words, "Mary E. Smith and Louise B. Smith," were written on the envelope, which was in a tin box containing some silver, etc., the property of Mrs. Smith. The papers were found in Col. Moore's office. The lease was tendered to plaintiff after the death of Col. Moore and she declined to receive it. It does not appear that either Mrs. Smith or plaintiff ever had possession of it. There was very much evidence in regard to the conduct of the parties and their counsel, respecting the possession, etc., of the lease, defendants insisting that the lease was executed by Col. Moore pursuant to the terms of Mrs. Smith's and plaintiff's contract with him, for the purpose and having the effect of vesting in them a life estate in the property, and that the

evidence showed a delivery by Col. Moore by placing it in an envelope in his safe-among the other papers, etc., of Mrs. Smith; that Col. Moore, being the agent of Mrs. Smith, held the actual possession of the paper for her benefit. Plaintiff denied that such was the contract, contending that she knew nothing of the execution or existence of the lease; that her mother and herself thought that they signed a will and never intended to sign a deed conveying the property. It thus became material to inquire, as an evidentiary fact relevant to the issue, whether the lease had been delivered either to Mrs. Smith or the plaintiff. Mrs. Smith and Mr. Cutler being dead, it was impossible to show by direct evidence what was done by them in respect to the lease. The offer to deliver it to the plaintiff by defendants, after the death of Col. Moore, throws but little, if any, light upon the question. His Honor instructed the jury: "That Roger Moore could not deliver the lease from him to the plaintiff and her mother by simply putting the lease among their papers, but in order to make it effective the jury must find from the evidence that the lease was delivered to them personally, or to their duly authorized agent, and that agent must be some one other than Col. Moore, and a delivery to Mrs. Smith would not be a valid delivery to the plaintiff Louise, unless the jury should find that Mrs. Smith was authorized by the plaintiff to accept the lease for her." This instruction is assigned as error. What constitutes delivery of a deed is a mixed question of law and fact. When the conduct of the parties leaves the question of delivery in doubt, their intent, gathered from their conduct and declarations, control. It is, in all cases, essential to the delivery of a deed that it pass out of and beyond the control of the grantor and into the actual or constructive control of the grantee. So long as the grantor retains control of or the power to recall the possession of the paper, it cannot be said to have been delivered. The *custody* of the deed may remain with the grantor provided the control or power to recall it has

passed from him. There must be not only a parting with
control of the deed by the grantor, with the present intention
that it shall operate as a conveyance of the land, but there
must likewise be an acceptance, either by the grantee or by
some one for him. Devlin on Deeds, sec. 278, *et seq.* In this
case the burden of proof to show that the lease was delivered
to Mrs. Smith by Colonel Moore was on the defendants. We
concur with his Honor that such delivery was not shown in
the absence of any evidence that Colonel Moore was author-
ized to receive it, as her agent, from himself. If Mrs. Smith
or the plaintiff claimed under the deed and the jury found
the facts set out in the record to be true, and that Colonel
Moore intended, by his act, to put the deed beyond his *legal*
control, they would be justified in presuming that Mrs. Smith
assented to the act as and for her benefit. In the aspect in
which the question is presented here, no such presumption
can be indulged. It was his duty to have had the lease regis-
tered—which act would have placed his intention beyond
question—or to have delivered it to the parties interested.
He was, in the view most favorable to the plaintiff's conten-
tion, the agent of Mrs. Smith, and his retention of the lease
under his control, without registration, falls short of showing
valid, lawful delivery. We do not find any error in his
Honor's instructions regarding the weight to be given by the
jury to the evidence concerning the case. The failure to have
it registered was a circumstance which the jury could con-
sider upon the issue of fraud.

   The other assignments of error relate to his Honor's charge
upon the question of fraud, in the light of the evidence tend-
ing to show that at, before and after, the execution of the
deed, Colonel Moore was the general agent of Mrs. Smith.
His Honor said to the jury: "When one is the general agent
of another and has entire management of his affairs, so as in
effect to be as much his guardian as the regularly appointed
guardian of an infant, *a presumption of fraud, as a matter*

*of law,* arises from a transaction between the agent and his
principal for the latter's benefit, and it will be decisive of
the issue in favor of the principal unless it is rebutted."

"That if the jury find from the evidence that Roger Moore
was the general agent of the plaintiff and her mother in the
management of this property, at the time he procured the
deed to be executed, then the law presumes that the transac-
tion was fraudulent; and unless the defendants have satisfied
you, *from all their evidence,* by the greater weight of the
evidence, that the transaction was open, fair and honest, it
would be the duty of the jury to answer the issues 'Yes.' "

"If the jury find by the greater weight of the evidence
that Roger Moore, at the time he procured the deed from the
plaintiff and her mother, was the general agent of the plain-
tiff and her mother, in the management of their property and
affairs, and that they relied upon him for his advice in their
business transactions, and that this relationship existed at
the time he procured the deed, then the law presumes that
the deed was obtained fraudulently, and the burden would be
on the defendants to show that Roger Moore obtained the
deed fairly; and unless the defendants have satisfied you that
the deed was obtained fairly by the greater weight of the
evidence, it would be your duty to answer the issue 'Yes,'
because, when such an agent deals with his principal in a
transaction by which he is to be benefited, and the transac-
tion is questioned by his principal, the fiduciary relationship
being established, the law puts the burden on such agent to
show there was no fraud; and if you find, by the greater
weight of the evidence, that Roger Moore, at the time he pro-
cured the deed was such general agent, then the burden is on
the defendants to satisfy you by the greater weight of the
evidence that the deed was obtained fairly, and unless you
are so satisfied, you should answer the issue 'Yes,' *even though
you should be of the opinion that the plaintiff has not shown
that any fraud was committed."*

SMITH *v.* MOORE.

The learned counsel for defendants contend that these instructions are not in accord with the opinion in this cause on the former appeal.  142 N. C., 277.  We have examined the careful and well considered language of Mr. Justice Walker in the case as reported in that appeal.  It was our purpose, and we think that the language correctly expressed it, to adhere to the law as laid down by *Pearson, C. J.,* in *Lee v. Pearce,* 68 N. C., 76.  In that case it is said: "After a full consideration of the authorities and 'the reason of the thing,' we are of the opinion that only 'the known and definite fiduciary relations' by which one person is put in the power of another, are sufficient under our present judiciary system, to raise a presumption of fraud, as a matter of law, to be laid down by the Judge as decisive of the issue, unless rebutted." Among "the known and definite fiduciary relations," the Chief Justice says that, "When one is the general agent of another and has entire management so as to be, in effect, as much his guardian as the regularly appointed guardian of an infant," the presumption applies.  It is conceded that there is evidence tending to show that the relations existing between Colonel Moore and Mrs. Smith and plaintiff were within the language quoted.  In *McRae v. Battle,* 69 N. C., 98, the doctrine of *Lee v. Pearce* was argued by learned and eminent counsel and adhered to, the Court, *Pearson, C. J.,* saying: "The relation raises a presumption of fraud which annuls the act unless such presumption is rebutted.  The doctrine rests on the idea not that there *is* fraud, but that there *may be* fraud, and gives an artificial effect to the relation beyond its natural tendency to produce belief.  The doctrine was adopted from motives of public policy to prevent fraud, as well as to redress it, *and to discourage all dealings between parties standing in these fiduciary relations."*

*Lee v. Pearce* has been cited with approval in *Harris v. Carstarphen,* 69 N. C., 416; *Simmons v. Westmoreland,* 72 N. C., 587; *Edgerton v. Logan,* 81 N. C., 172, where the

relation was attorney and client. *Smith, C. J.,* citing *Lee's Case,* italicizes the words, "presumption of fraud as a matter of law." *Wessell v. Rathjohn,* 89 N. C., 377, and many other cases. It is the controlling authority with us. We think that his Honor's instruction to the jury is in accord with the law and the decisions of this Court.

There was much evidence strongly tending to rebut the presumption, showing that the entire transaction originated in the mind of Mrs. Smith, and that both Colonel Moore and the attorney selected by her to draw the paper acted in perfect good faith. She writes Mr. Cutler on 2 March, 1885: "It is my first and greatest wish, should I outlive my only remaining child, that my house and lot on Red Cross and 2nd streets shall descend to my son-in-law, Roger Moore, and his children. His loving kindness and sympathy to me in all time of trouble has been unswerving, and in all times of need his hand, and his alone, has been stretched out for my help and comfort. He has buried my dead, paid my taxes and insurance for twenty years. . . . . Another strong claim in his favor is from his child, my grandchild, lately dead." So far as this record shows, no word had passed between Colonel Moore and Mrs. Smith in regard to her property at the time she wrote this letter. The gentleman to whom it was addressed was an attorney of the highest character and professional skill. There is ample evidence to sustain the statements made in the letter. It is not claimed that there was any secrecy in the manner, time or place of executing the deed. It was placed on record January 23, 1886. It is one of the tragedies so frequently occurring in human life that a transaction, originating in the most benevolent and kindliest motives, concludes in dissension and rupture of the ties of family and friendship. The evidence taken as a whole falls far short of showing that any fraud was committed or intentional wrong done by those who have passed away. That a mistake was made in interpreting Mrs. Smith's purpose, that

a will was intended to be executed by her, and so understood by the plaintiff, and not a deed, as understood by her attorney and Colonel Moore, is not impossible or improbable; that the lease was prepared and signed securing to Mrs. Smith and the plaintiff the possession and enjoyment of the property is conceded. Unfortunately it was not registered and, as we have seen, its delivery not established. While we find no error in the conduct of the trial entitling the plaintiff to a new trial, we think that, in view of the fact that in neither appeal has it been necessary to set out the testimony, it is but just to the dead, whose conduct has come under investigation, to say that we think that the verdict of the jury (as in the second trial, 145 N. C., 269), was founded upon the presumption of law as to which they were correctly instructed by the Court. We have given to the entire record our most anxious and careful consideration. The testimony and contentions of the parties were fairly submitted to the jury. As we have endeavored to show, his Honor's rulings are in accord with the decisions of this Court. It may not be improper to say, in conclusion, that the wisdom of the law discouraging transactions between persons occupying fiduciary relations, whereby any advantage is gained by the one whose duty it is to protect the other, is illustrated in this case. It was, in the light of the defendant's contention, the manifest duty of Colonel Moore to have registered the lease for the protection of Mrs. Smith and the plaintiff. His failure to do so, however free from intentional wrong, exposed the home and other property of these aged and infirm ladies to be sold at any time during his life, or since his death. The lease was invalid, until registered, against the deed as to purchasers for value and creditors. The law seeks to enforce the elementary truth that men should not have "a divided duty" or occupy antagonistic relations towards those who have entrusted to their care important interests. There is

No error.