On 22 January, 1795, a grant was issued to Daniel Wheaton for 44,160 acres of land lying in New Hanover County, near Pender, that is commonly known as "swamp lands." On 18 (565) December, 1899, William Nutt, sheriff of New Hanover, executed a tax deed to Benjamin Williams, Governor, for the said property, and the title remained in the Governor and his successors until it was vested in the Literary Fund by Laws 1825, ch. 1268, sec. 1, which transferred to said fund for the support of common schools, together with other property, "all of the vacant and unappropriated swamp lands in the State," and Revised Statutes 1837, ch. 67, sec. 3, provides: "All the swamp lands in this State not heretofore duly entered and granted to individuals shall be vested in said corporation and successors in trust as a public fund for education and establishment of common schools." Laws 1842, ch. 36, sec. 2, also provides: "All the swamp lands to which this State is now entitled, or to which this State shall afterwards become entitled under the provisions of this act, or otherwise, shall be and are hereby vested in the present directors of the Literary Fund of North Carolina and their successors, in trust as a public fund for education and the establishment of common schools."
On 22 March, 1849, a grant was issued to Ezekiel Chadwick for 62 acres of land, lying within the boundaries of this 44,160-acre tract. But there is no evidence tending to show that he or those claiming under him were ever in possession, and it is admitted that they have not been.
On 1 September, 1912, the State Board of Education agreed to sell to R. C. Remick and he agreed to buy the 62 acres at $3 per acre, "provided the State Board of Education could convey a good and indefeasible title in fee to said land," which sale was to be closed by 10 September, 1912. Remick, the defendant, refused to pay the purchase price and accept the deed for said land, on the ground that the State Board of Education did not have title to the property and cannot make him a good deed. The question involved in this proceeding is whether or not *Page 461 
the State Board of Education has title to the 44,160 acres embraced in the grant to Daniel Wheaton, which are the same lands as are described in the deed from William Nutt, sheriff, to the Governor.
On the "agreed state of facts," Judge Carter entered judgment for plaintiff, and the defendant appealed.
The first assignment of error is that the tax deed from William (566) Nutt, sheriff, to Benjamin Williams, Governor, was invalid because the recitals in the deed, if true, are insufficient to justify the levy and sale of the land for taxes, and the said deed is therefore inoperative and void. The recitals in the deed are as follows: That no person listed the land for taxes or offered to pay the taxes; the land was advertised in the newspapers agreeable to law and was sold pursuant to such advertisement; a fair offer was made to any person to pay the taxes, but no one offered to do so and the same was struck off to the Governor and his successors in office.
In these recitals every fact necessary as the basis for a proper and legal sale of the property is set out in the deed, and if taken as true there can be no doubt that they are sufficient. 37 Cyc., 1439, says: "The tax deed is required to show by distinct recitals that the land was in fact sold for the nonpayment of taxes, by what officer the sale was made, to whom it was made, and the manner of the sale, as that it was at public auction, to the highest bidder or to the bidder who would take the least quantity of land, for the taxes, etc., at least so far as to show that no provision of the statute was violated in the conduct of the sale."
It is contemplated, however, that the plaintiff has not shown (and after the lapse of 113 years certainly will be unable to show) that the recitals in the deed are true, and hence that the deed is void unless the truth of those recitals are proven, though no one has claimed the land or paid taxes on it for more than a century. Prior to chapter 137, Laws 1887, now Revisal, 2909, it was held in Land Co. v. Board of Education. 101 N.C. 39, that there must be evidence dehors the deed that the recitals in the sheriff's tax deed are true. It was also held in Fox v. Stafford,90 N.C. 298, that the recitals in a tax deed were not evidence against the owners of property or prima facie evidence that the law had been complied with, and the burden of proving these things was on the purchaser.
The result of the above decisions was that up to 1889 no tax deed had ever been held valid on appeal to the Supreme Court and the State was a heavy loser; besides, the taxation which should have been borne by tax defaulters was thrown upon those who had already borne (567) the burden of their own taxes. To remedy this evil, a Tax Commission was appointed to examine into the provisions for the sale of land for taxes in other States, and on their report, chapter 137, Laws 1887 *Page 462 
(now, with some modification, Revisal, 2909), was adopted, which made certain recitals in a tax deed presumptive evidence and certain others conclusive evidence. The effect of that act was to change the burden of proof, and the power of the Legislature so to enact was sustained in Moorev. Byrd, 118 N.C. 688, and in many cases since, quoting that decision. Indeed, it seems to be established beyond controversy that it is competent for the Legislature at any time to change the rules of evidence applicable to existing contracts, including deeds. Thompson v. Missouri, 171 U.S. 380; Brannon XIVth Amendment, 292. It has also been frequently held that the Legislature may make the recitals in a tax deed prima facie evidence of their truth. In addition to the decisions in our own Court above referred to, are Rietler v. Harris, 223 U.S. 437; 2 Wigmore Ev., sec. 1354 (3), pp. 1670, 1671. It is useless to cite further authorities for a principle so well sustained.
It is further objected, however, that said deed of William Nutt, sheriff, does not state that the land had become "liable to be sold for taxes." But it does recite that "the land was not given in by any person or persons whatever for the payment of taxes thereof," and this certainly made the land liable to taxation under the act of 1782; Iredell's Statutes, ch. VII, sec. 6, p. 430.
But it is further contended that there is no recital in the deed that the assessors did so value and appraise his property. Revisal, 4047, however, expressly names among the presumptions raised as to the tax deeds for swamp lands that "The manner in which the listing, assessment, levy, and sale was conducted was in all respects as the law directed; that allthe prerequisites of the law were duly complied with by all officers orpersons who had, or whose duty it was to have, any part or action in anytransaction relating to or affecting the title conveyed or purporting to be conveyed by the deed from the listing and valuation of the (568) property up to the execution of the deed, both inclusive, and that all things whatsoever required by law to make a good and valid sale and vest the title in the purchaser was done and that all recitals in such deed contained are true as to each and every of the matters so recited." This is made presumptive evidence, and the burden is shifted upon any one claiming the lands by reason of the alleged invalidity of the deed to show that the presumption is incorrect. Besides, it is provided in Revisal, 2909, that in order to defeat the title which such deed purports to convey, it must have shown that either such property was not subject to taxation for the year or years named in the deed, or that the taxes had been paid before the sale, or that the property had been redeemed from the sale. None of these things have been done in the present case.
Under Revisal, 4047, the presumption, therefore, is not only that the land had not been listed for taxation and the tax not paid as provided, *Page 463 
among other things, in Revisal, 2909, but the deed itself carried a further presumption, that on failure to list property for taxation the proper officers had valued it and placed it on the tax list as required by the statute then in force.
The owner of land has notice that he must pay taxes, and that if it is not paid the land will be sold. It is true, this Court in Parrish v. CedarCo., 133 N.C. 478, and since in Lumber Co. v. Lumber Co., 135 N.C. 743; s. c., 137 N.C. 444, held unconstitutional a provision that where the owner of swamp land had failed to pay all arrearages of taxes levied and assessedthereon, or which ought to have been levied thereon before a certain date, the land ipso facto should be forfeited and vested in the State without any judicial proceedings. In King v. Mullins, 171 U.S. 420, the point was thoroughly discussed, and contrary to the decision of our Court above cited, such a statute was held constitutional. However, such provision has been struck out of our statute, and Revisal, 4047, contains no such provision. It merely provides that the deeds for land to the State Board of Education under a sale for taxes shall be presumptive evidence of the facts recited in that section, and throws the burden of proof upon the party contesting the title to prove that the taxes have been paid or other defect in any of the steps which would make the deed invalid.
This, as we have seen, is within the authority of the lawmaking (569) body. The presumption, therefore, is that the proper officers, upon the failure of Wheaton to list the land for taxes, assessed the said property and placed it on the tax list. This is what the statute then, and now, requires to be done before the sheriff is authorized to sell, and the Legislature is as fully competent to provide that such presumptions arose as that the recital in the deed is a presumption that the land was not listed by the owner and the taxes were not paid. The deed recites that the advertisement was made in the newspapers agreeable to law and that the land was sold pursuant thereto.
There was further objection that the seal of William Nutt was not affixed to said deed. This is cured by Pell's Revisal, sec. 949 (a), as to all deeds executed prior to 1 January, 1895. Besides, the parties have filed an agreement amending the record, showing that as a matter of fact the seal or scroll was affixed. Further, the court could from the recitals in the deed have decreed that the seal should be placed thereon now. Moorev. Quince, 109 N.C. 85.
It is further objected that the description in the deed from Sheriff Nutt was not sufficient to convey the 44,160 acres of land set out in the grant to Daniel Wheaton which he purports to convey. The deed from Nutt to the Governor describes the land as follows: "A certain parcel of land entered by Daniel Wheaton, on the east side of the northeast *Page 464 
branch of the Cape Fear River, including part of the Holly Shelter Pocosin, beginning at a large cypress and water oak on the edge of Holly Shelter Creek, on the south side thereof, about one-quarter of a mile above James Howard's line, containing 44,160 acres." By comparing the above description with the grant to Daniel Wheaton, for a like acreage with like beginning, it will be seen that the same land is referred to and can be identified as a matter of law. This would be made more definite by reference to the entry and plat. But if the same description in the grant from the State to Daniel Wheaton was too indefinite, then the State has never granted the land. Besides, the land could be identified by parol evidence. Blow v. Vaughan, 105 N.C. 198; Euliss v. McAdams, 108 N.C. 507.
(570) It is further assigned as error that the land was not vacant and unappropriated land. Iredell's Collected Statutes, Laws 1788, p. 115, provides: "That it shall be the duty of any sheriff, before he settles his account with the Comptroller, to deposit said deed or deeds in the office of the Secretary of State, who shall record and keep the same in his office for the benefit of the State; and the said land so conveyed shall be deemed vacant land and liable to entry."
We have already set out above the acts of 1825, 1837, and 1842, by which the State transferred all its vacant and unappropriated swamp lands to the Literary Fund. It follows, then, that the grant of 62 acres to E. Chadwick, in March, 1848, within the boundaries of this tract, was without the authority of law and void. It is admitted that Chadwick has not been in possession.
Revisal, 4047, is an admirably drawn and most necessary statute. It applies only to actions concerning Swamp lands and to which the State Board of Education is a party. Without it, this tract of land, which has paid none of the burdens of government for 113 years, would be a derelict as to which nothing could be done. The State after the lapse of all these years could not show that the land had been listed by the assessors nor that the other acts required by the statute had been complied with. It is entirely proper and competent for the State to provide that the presumption that public officials have done their duty should apply, and throw upon any adverse claimant the burden of proving the contrary. This decision does not, in any way, conflict with the cases of King v. Cooper, 128 N.C. 347;Warren v. Williford, 148 N.C. 474; Matthews v. Fry, 141 N.C. 582, andRexford v. Phillips, 159 N.C. 213, the facts in those cases and this one being very different.
Upon full consideration of the exceptions, the judgment below must be
Affirmed. *Page 465 
(571)