JOHNSTON v. KRAMER BROS. & CO. et al.

(District Court, E. D. North Carolina. March 10, 1913.)

No. 341.

1. **DEEDS (§§ 54, 66\*)—REQUISITES—DELIVERY.**

No title passes by a deed, though signed and sealed, until delivery; and what constitutes a delivery is a mixed question of law and fact.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 116, 127, 633; Dec. Dig. §§ 54, 66.\*]

2. **DEEDS (§ 208\*)—DELIVERY—EXECUTION—ACKNOWLEDGMENT IN OPEN COURT.**

That the grantor in open court, to bring a deed to registration, acknowledged its execution, was sufficient, in the absence of evidence to the contrary, to sustain a finding that it had theretofore been, or was at that time, delivered, subject to be overcome by evidence showing that there had been no delivery in fact.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625–632; Dec. Dig. § 208.\*]

3. **DEEDS (§ 87\*)—STATE LAW—EFFECT OF REGISTRATION.**

Under Laws N. C. 1715, c. 7, § 1, providing that no conveyance of land other than a mortgage shall be available in law, unless acknowledged by the grantor, or proved and registered in the county where the land lies, within two years after date, and that all deeds so executed shall be valid to pass estates in land without livery of seisin, the registration of a deed gives it the force and effect of a feoffment with livery of seisin.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 227; Dec. Dig. § 87.\*]

4. **DEEDS (§ 87\*)—REGISTRATION—PASSING TITLE—DATE.**

Notwithstanding Laws N. C. 1715, c. 7, § 1, requiring registration of deeds, a deed, when registered, has the effect of passing title by relation as of the date of its delivery.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 227; Dec. Dig. § 87.\*]

5. **DEEDS (§ 192\*)—SEPARATE DEEDS BY SAME GRANTOR—IDENTITY OF DATE—PRESUMPTIONS.**

Where an owner of land received a valuable consideration therefor and made a deed to different persons on the same date, it would be presumed that he intended to vest the title in the land conveyed in the grantees named in one of the deeds.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 562, 563; Dec. Dig. § 192.\*]

6. **DEEDS (§ 200\*)—EXECUTION—DATE—DELIVERY—DATE OF ACKNOWLEDGMENT—EFFECT.**

Where a grantor executed two deeds to the same land to different persons on the same date, but acknowledged them at different dates,

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the date of acknowledgment was competent evidence to be considered as bearing on the date of delivery of the deeds.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 601; Dec. Dig. § 200.*]

**7. DEEDS (§ 208*)—EXECUTION—DELIVERY—TIME.**

Where a grantor executed two deeds to the same land to different grantees on the same date, but acknowledged the same at different dates, evidence *held* to warrant a finding that one of the deeds under which defendants claimed title was delivered in escrow to secure an advancement made by the grantees to the grantee in the other deed, to be paid on the purchase price, and that thereafter, on payment of the amount so advanced, the first deed had been surrendered to the original grantor, and the second deed executed as of the date of the purchase by the original grantor to the purchaser, which passed the title.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 625-632; Dec. Dig. § 208.*]

**8. TAXATION (§ 746*)—TAX DEEDS—LOCATION OF LAND.**

Tax deeds, executed by a sheriff, purporting to convey lands which, in fact lay in another county, were void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1491, 1492; Dec. Dig. § 746.*]

**9. QUIETING TITLE (§ 23*)—PROOF.**

Under Revisal N. C. 1908, § 1589, relating to suits to quiet title, plaintiff may maintain a suit to remove a cloud on title, without showing possession, on proving that he has the legal title to either the whole or an undivided interest in the land.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 55, 56; Dec. Dig. § 23.*]

**10. COURTS (§ 371*)—STATE STATUTES—ENFORCEMENT IN FEDERAL COURT.**

A state statute, relating to the remedy of a suit to quiet title or remove a cloud from the title to land located in that state, may be enforced in the federal court as between parties of diverse citizenship.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 907, 972-976; Dec. Dig. § 371.*]

**11. QUIETING TITLE (§ 10*)—REMOVAL OF CLOUD—DEFENSES—PAYMENT OF TAXES.**

In a suit to remove a cloud on title, failure of plaintiff's ancestors for many years to pay taxes on the land was immaterial, since such failure did not work a forfeiture of title, otherwise than by a sale of the land for taxes in conformity with the law.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 36-42; Dec. Dig. § 10.*]

**12. PUBLIC LANDS (§ 164*)—LANDS OF STATE—CONFLICTING GRANTS.**

Under the express provisions of Laws N. C. 1893, c. 490 (Revisal 1908, § 1699), where land in controversy has been previously granted to plaintiff's predecessor in title, a subsequent grant of the same land, under which defendants claimed title, was void for all purposes.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 466-476; Dec. Dig. § 164.*]

**13. QUIETING TITLE (§ 7*)—CLOUD ON TITLE—INVALID DEED—EXTRINSIC EVIDENCE.**

A court of equity has jurisdiction to remove as a cloud on title any grant, deed, or other muniment of title valid on its face, the validity of which can only be shown by extrinsic evidence.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14-33; Dec. Dig. § 7.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**14.** QUIETING TITLE (§ 7*)—"CLOUD ON TITLE."

A "cloud on title" is in itself a title or incumbrance apparently valid, but in fact invalid; something which, nothing else being shown, constitutes an incumbrance on or defect in title; something which shows prima facie the right of a third person, either to the whole or some interest in the title, or to a lien thereon.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14–33; Dec. Dig. § 7.*

For other definitions, see Words and Phrases, vol. 2, pp. 1233–1235.]

**15.** QUIETING TITLE (§ 7*)—EQUITY JURISDICTION—GROUNDS.

Equity has jurisdiction to remove a cloud on title, when the illegality or defect does not appear on the face of the record, but must be shown by evidence aliunde, so that the record would make out a prima facie right in one who would become a purchaser, and the evidence to rebut the case may be lost, or become unavailable from the death of witnesses, or when a tax deed would be presumptive evidence of a good title in the purchaser, who might rely thereon for recovery of the land until irregularities were shown.

[Ed. Note.—For other cases, see Quieting Title, Cent. Dig. §§ 14–33; Dec. Dig. § 7.*]

In Equity. Suit by Tilghman Johnston against Kramer Bros. & Co. and another, to remove a cloud on title. Decree for complainant.

Winston & Biggs, of Raleigh, N. C., for plaintiff.
E. F. Aydlett, of Elizabeth City, N. C., for defendants.

CONNOR, District Judge. Plaintiff alleges: That he is the owner in fee of $^{11}/_{126}$ undivided interest in a tract of land lying and being situate in the county of Perquimans in the Eastern district of North Carolina, described by metes and bounds. That defendant Leonard Vyne claims to be the owner of said tract of land, and that said claim is based upon a grant issued to him by the state of North Carolina, bearing date February 7, 1906. That defendant Kramer Bros. & Co., a corporation, claims an interest in the timber standing upon said land by virtue of a contract made by said corporation with said Vyne. He asks the court to declare the grant to be a cloud upon his title, and to make a decree removing same and quieting his title. Defendants deny that plaintiff is the owner of, or owns any interest in, said land. They admit that defendant Vyne claims title thereto under the grant from the state, and allege that he acquired from the state a good and indefeasible title thereto.

Plaintiff deraigns his title as follows: (1) A grant from the state of North Carolina to John Hamilton, bearing date December 27, 1792. (2) A deed from Hamilton to John McKinney, bearing date October 20, 1794. (3) A deed from John McKinney to William Cathcart and Francis Johnson, bearing date March 2, 1795. (4) A deed from Francis Johnson and wife to Alexander W. Johnson for an undivided interest, bearing date February 5, 1806. (5) Descent from A. W. Johnson, deceased.

Defendants rely upon the grant set out in the complaint and answer,

averring that, by reason of the facts hereinafter set out, no title passed by the deed from Hamilton to McKinney; that, if title did pass, it has been divested by certain sheriff's deeds introduced by defendants.

The grant to John Hamilton describes a large boundary, recited, in the grant, to be situate in Pasquotank county, but conceded to include land situate in both Pasquotank and Perquimans counties, containing 26,000 acres. It is denied that the locus in quo is within the boundaries of said grant. It is apparent, however, that the plaintiff's contention in that respect is correct. The land is within the calls of the grant, and is in that portion of it situate in Perquimans county, which is one of the oldest counties in the state. On its records is found the first deed of which there is any record in the state, executed by the king of the Yeopim (Indians) to George Durant, bearing date March 1, 1662. 1 Col. Records. Pasquotank county was set apart in 1729. The fact that the entry was made and the grant issued for lands in both counties, although described as in only one, brings it within the curative provisions of Acts 1807, c. 727 (1 Rev. Stat. c. 42, § 29).

The evidence from both plaintiff and defendants is amply sufficient to show that the land granted to defendant Vyne February 7, 1906, is within the boundaries of the Hamilton grant of December 27, 1792, and is conceded to be in Perquimans county. It is so described in his grant. The question presented, therefore, is whether plaintiff has such title or interest in the land as entitles him to ask the court to remove a cloud from his title, and whether the Vyne grant, by statute declared to be void, constitutes a cloud upon his title.

Defendants, for the purpose of showing that McKinney acquired no title under the deed from Hamilton, introduced the record of a deed, over plaintiff's objection, from Hamilton to Lindsey and Myers, conveying the same land described in his deed, of same date as the deed to McKinney. Defendant contends that, in this condition of the title, two deeds of same date for the same land to different grantees, it is impossible for the court to find, as a fact, which was delivered first.

[1] It is elementary that delivery is essential to the execution of a deed; that, although signed and sealed, no title passes from the grantor, or vests in the grantee, until it is delivered. The deed takes effect from the delivery. Goodson v. Whitfield, 40 N. C. 163; Vaughan v. Parker, 112 N. C. 96, 16 S. E. 908; Fortune v. Hunt, 149 N. C. 358, 63 S. E. 82. What constitutes delivery is a mixed question of law and fact. Smith v. Moore, 149 N. C. 185, 62 S. E. 892. It is held in North Carolina that the certificate of a probate court that the due execution of a deed has been acknowledged or proven includes the finding that it was delivered. In Younge v. Guilbeau, 3 Wall. 636, 18 L. Ed. 262, Mr. Justice Field says:

"The delivery of a deed is essential to the transfer of the title. It is the final act, without which all other formalities are ineffectual. To constitute such delivery the grantor must part with the possession of the deed, or the right to retain it. Its registry by him is entitled to great consideration upon this point, and might perhaps justify, in the absence of opposing evidence, a presumption of delivery."

[2] That the grantor, in open court, for the purpose of bringing it to registration, acknowledges the execution of a deed, is certainly sufficient, in the absence of any evidence to the contrary, to sustain a finding that it has theretofore been, or was at that time, delivered, subject to be overcome by evidence showing that there had not been in truth a delivery. Neither party produces the original deed, nor is there any evidence that either of the grantees went into possession under the deeds. It does appear, however, that McKinney, on the same day upon which the deed was acknowledged by Hamilton and registered, executed a deed for the land to Cathcart and Johnston, which was acknowledged by him, and on the same day admitted to registration. It is also worthy of note, in our quest for an explanation of this singular transaction, that Isaac Sexton is the attesting witness to both deeds—and a memorandum on one of them. It sufficiently appears, from the certified copies of both deeds introduced, that their execution was acknowledged "in open court," before the court of pleas and quarter sessions of Pasquotank county, and "ordered to be registered." That court had jurisdiction in the premises.

The question remains open, however, which was first delivered. In the absence of any evidence, other than such as may be gathered from the date of acknowledgment. as to the date of delivery, the question is presented whther any presumption arises as to the date of delivery as between two deeds bearing the same date. In Crabtree v. Crabtree, 136 Iowa, 430, 113 N. W. 923, 15 Ann. Cas. 149, it is held that:

"Where a deed bears an earlier date than the certificate of its acknowledgment, the deed is, in the absence of other evidence, presumed to have been delivered on the date of its acknowledgment."

Weaver, C. J., concedes that many courts, probably the majority, hold that the presumption, in such cases, is that the delivery is of the day of its date. It is held by the Supreme Court of the United States, in United States v. Le Baron, 19 How. 73, 15 L. Ed. 525, that:

"The delivery of a deed is presumed to have been made on the day of its date. But this presumption may be removed by evidence that it was delivered on some subsequent day."

In an exhaustive note to the case of Crabtree v. Crabtree, supra, the cases holding the two views are collected. In Guaranty Trust Co. v. Galveston City R. Co., 107 Fed. 311, 46 C. C. A. 305 (C. C. A. Fifth Cir.) it is held that, in the absence of any evidence of the date of delivery of a mortgage, the presumption will be indulged that it was delivered on the day of its acknowledgment. Among the cases holding this view are Fitzpatrick v. Brigman, 130 Ala. 450, 30 South. 500, and Loomis v. Pingree, 43 Me. 299.

In Nichols v. Palmer, 4 N. C. 319, it was held that where a deed bears a date different from the date of its attestation, and there is no evidence of the date of its delivery, it will be presumed to have been delivered on the date of its attestation. Court of Conference, Cameron, J.

[3] In several of the cases it is said that a deed is not complete until acknowledged. At the date of the execution of both deeds from

Hamilton, the statute in force in North Carolina (Laws 1715, c. 7, § 1) provided that:

"No conveyance, or bill of sale for land (other than mortgages), in what manner or form soever drawn, shall be good and available in law, unless the same shall be acknowledged by the vendor or grantor or proved by one or more evidences upon oath, either before * * * or in the county court, and registered by the public register of the county where the land lieth within two years after the date of said deed; and that all deeds so done and executed shall be valid and pass estates in land or right or other estate, without livery of seisin, attornment, or other ceremony in law whatsoever."

It is held in North Carolina that, by virtue of the language of the statute, the registration of a deed gives it the force and effect of a feoffment with livery of seisin. Hogan v. Strayhorn, 65 N. C. 279; Ivey v. Granberry, 66 N. C. 223; Bryan v. Eason, 147 N. C. 289, 61 S. E. 71.

[4] It is true that the courts of this state held that, notwithstanding the language of this statute, which remained in force until 1885, the deed, when registered, had the effect of passing title by relation, at the delivery of the deed. We are now dealing with the question whether the deed to McKinney, by reason of its acknowledgment and registration March 3, 1795, vested title paramount to the deed to Lindsey and Myers, acknowledged in September, 1797, and registered July 19, 1798. If it were shown by evidence, aliunde the deed, that the Lindsey and Myers deed was delivered prior to March 3, 1795, although acknowledged subsequently, it must be conceded that it would have vested title paramount to the McKinney deed. It was to remove this uncertainty in regard to title that Acts 1885, c. 147 (Rev. 1905, § 980), was enacted.

[5] In endeavoring to find some explanation of the peculiar conduct of the parties to the two deeds, bearing even date, consistent with their intention, so far as, after more than 100 years has elapsed, it is possible to do so, we may indulge the presumption that the grantor intended to vest the title in the land conveyed in the grantees named in one of the deeds. He received a valuable consideration for the land and intended to convey it. He did not intend that one deed should be so played off against the other as to leave the title in so much uncertainty that neither of his grantees could hold the land. It is a more reasonable presumption that he completed the execution of the deed in the manner prescribed by the law.

[6] All of the decided cases hold that either presumption as to the date of delivery is one of fact, and may be rebutted by competent evidence showing the true date upon which it was delivered to the grantee. Whether the date of acknowledgment must be given the probative weight of a rebuttable presumption, it is clear that, taken in connection with other facts and circumstances, it is competent evidence to be considered by the trier of the fact.

[7] An examination of the certified copies of the deeds, with memoranda thereon, discloses the following conditions: On October 20, 1794, John Hamilton signed a deed containing language sufficient to convey the land covered by his grant to William Lindsey and Moses Myers, of Norfolk, Virginia (merchants); the consideration recited

being "two thousand Spanish mill dollars." The attesting witnesses are Isaac Sexton and Peter Mercer. The following indorsement is found on this deed:

"Memorandum. 3 March, 1795. The above deed was this day delivered up to John Hamilton by John McKinney, and a new conveyance of the 20th October, 1794, was made by John Hamilton to said McKinney, for the nominal consideration of thirteen thousand Spanish mill dollars.

"[Signed]   John McKinney.
"Isaac Sexton.

"Camden County, 28th October, 1794. Then received of Moses Myers and William Lindsey, by the hands of Isaac Sexton, the within sum of two thousand Spanish mill dollars in full of the within premises.

"J. Hamilton."

"Memorandum. 3 March, 1795. Nixonton.

"Borrowed, and received from Hamilton, the patent within mentioned, dated 27 December, 1792, for 26,000 acres of land, which patent, being the title of the said Hamilton, I hereby promise to return him when demanded.

"John McKinney."

"State of No. Carolina, Pasquotank County.

"September Term, 1797.

"Present: The worshipful justices.

"This may certify that the within deed of bargain and sale of land from John Hamilton to Lindsey and Myers was exhibited, and acknowledged in open court, and ordered to be registered. At the same time a memorandum on the said deed, signed by John McKinney and witnessed by Isaac Sexton, who is since dead, was proved by the oath of Benjamin Jones, and also ordered to be registered.

"Test: Will T. Muse, Clk.

"Registered the 19th of 7th Mo. July, 1798.

"By Thomas Jordan, P. Regr."

The deed from Hamilton to McKinney, of October 20, 1794, contains the following recital:

"Witnesseth, that the said John Hamilton, for and in consideration of the sum of thirteen thousand Spanish milled dollars to him in hand paid by William Lindsey and Moses Myers for the aforesaid John McKinney, the receipt whereof the said John Hamilton doth hereby acknowledge, and doth discharge and exonerate the said McKinney from any further demand whatsoever on that account."

John Brownrigg and Isaac Sexton are the attesting witnesses to this deed. McKinney's deed to Cathcart and Johnston of March 2, 1795, acknowledged and registered March 4, 1795, recites a consideration of "twenty-six thousand French crowns." Isaac Sexton and William Lane are the attesting witnesses thereto.

It will be noted that Isaac Sexton, the witness to the several deeds, who, it seems, was the person through whom the money was paid to Hamilton, was dead September, 1797, at the time the Lindsey and Myers deed was acknowledged. It is impossible to explain, with entire satisfaction, the unusual course pursued by the parties to these deeds. It will be observed that Mr. Hamilton was an attorney, and it may be presumed that he was familiar with the statute regarding the execution of deeds—their probate and registration. The inference which I think may reasonably be drawn from the indorsements found on the deed, which are competent, not as affecting or controlling the terms of the deeds, but as explaining the ambiguous conduct of

the parties, is that McKinney was the purchaser of the land, and that Lindsey and Myers advanced the purchase money, and that the deed to them was held in escrow until McKinney paid the amount advanced by them; that the deed was, upon its payment, put in the possession of McKinney, and by him delivered up to Hamilton, who executed the second deed, dating it as of the day of the deed to Lindsey and Myers, and immediately acknowledging its execution for the purpose of registration, thereby enabling McKinney to convey to Cathcart and Johnston. This large body of land, it will be noted, is described as being "commonly called desert," and its value was then, as now, largely speculative. Until the deed to Lindsey and Myers had been recorded, the title was imperfect—sometimes said by the court inchoate; it could be arrested by a redelivery to the grantor. Linker v. Long, 64 N. C. 298.

The fact that McKinney had the Lindsey and Myers deed, before acknowledgment and registration, in his possession, and surrendered it to Hamilton, who, on the same day, executed the deed to McKinney, is explained by the indorsements found on it. It is also significant that Lindsey and Myers, so far as the record discloses, made no conveyance of the land, and no one asserts any title or claim under it. This would seem to lead to the conclusion that the deed to McKinney of October 20, 1794, was signed and delivered on March 3, 1795, and that the Lindsey and Myers deed was, at that time, surrendered to Hamilton. The effect of this arrangement was to vest the title in McKinney, and, by his deed, in Cathcart and Johnston. Why, two years thereafter, Hamilton acknowledged and put to registration the Lindsey and Myers deed, is difficult to understand; but whatever his purpose may have been, his act did not affect the title of McKinney and those claiming under him. By virtue of the statute his act, in acknowledging and registering the deed on March 4, 1795, was valid to pass the estate in the land to McKinney. That McKinney accepted the deed is manifested, both by his declaration, indorsed on the Lindsey and Myers deed, and his conveyance of the land, on the same day, to Cathcart and Johnston.

[8] Defendant, however, insists that, conceding the title to have been in them, it has been divested by the sales for taxes and the deeds executed by Grice, sheriff, September 8, 1812, and Pool, sheriff, September 10, 1818. It will be noted that both were sheriffs of Pasquotank county. The first deed conveys 19,520 acres, by metes and bounds; and the second conveys the remainder of the Hamilton grant, less one acre, all described as lying and being situate in Pasquotank county. Whatever portion of the land covered by the grant may have been included within the boundaries set forth in these deeds, it is manifest that no part of the land lying in Perquimans county passed under them. The sheriffs of Pasquotank county had no authority, under the tax list of that county, treated as an execution, to sell land in Perquimans county, and their deeds were ineffectual to pass any title to such land. It being conceded that the land covered by the grant to defendant Vyne is situate in Perquimans county, it must follow that the title thereto was not affected by these two deeds, or either of them.

The defendant relies upon the recitals in these deeds to sustain the tax sales, and cites the case of State Board of Education v. Remick, 159 N. C. ——, 76 S. E. 627, for that purpose. That case is correctly decided. There the land, at the sale by the sheriff, was bought by the Governor for the state, and, by legislation, the title thus acquired was vested in the Board of Education. The statute making the recitals presumptive evidence of their truth is clearly constitutional, as held by the court in that case. Giving to the recitals in the two sheriff's deeds full force and effect, several fatal defects are apparent. It is unnecessary to discuss them, because the sheriff had no authority to sell the land in Perquimans county. They locate the land in Pasquotank, although the defendant's evidence tends to show that the boundaries set out include the land in controversy in Perquimans.

Defendant further insists that the evidence shows that the grantees in those deeds conveyed portions of the land to other persons, and that by successive conveyances, set out in the evidence, the title to such portions is in persons who are strangers to plaintiff's title. Conceding this to be true, and conceding that, in an action of ejectment, defendants could defeat a recovery by plaintiff by showing an outstanding title in a stranger, it is evident that no adverse possession of the locus in quo is shown. The defendant's entire contention in regard to the land claimed by them, and the only contention upon which the grant to Vyne can be sustained, is that the land covered by it was, prior to the date of his grant, vacant and unappropriated land. It is uncleared, and its chief value consists of the standing and growing timber thereon. It is a part of the Dismal Swamp—low, flat land. The evidence tends to show that it is not included in the boundaries contained in the deeds under which the persons living upon other portions of the Hamilton grant claim title. I am of the opinion that there is no evidence of an ouster, followed by adverse possession, sufficient to take title out of the plaintiff.

[9] It is conceded that before plaintiff can maintain his suit, and have a decree removing a cloud from his title, he must show that he has the legal title to either the whole or an undivided interest in the land. Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201. But for the provisions of the North Carolina statute (Pell's Rev. §. 1589), plaintiff would be required to show that he was in possession. New Jersey, etc., L. Co. v. Gardner-Lacy & Co., 178 Fed. 772, 102 C. C. A. 220. Under the provisions of the North Carolina statute, the owner of land, although not in possession, may bring an action to remove a cloud from his title.

[10] It has been held that the remedy given by statutes of this character may be enforced in the federal court when the parties are inhabitants of different states. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52.

[11] To the suggestion that plaintiff's ancestors have not, for many years, paid the tax on the land, it is sufficient to say that the failure to do so does not, under any statute in force in this state, work a forfeiture of title, otherwise than by a sale conducted in conformity with the law.

[12] At the date upon which the grant of the locus in quo to Vyne was issued the statute provided that:

"Every entry made, and every grant issued for lands not authorized by this chapter to be entered or granted shall be void, and every grant of land made since the sixth day of March, one thousand eight hundred and ninety three, in pursuance of the statutes regulating entries and grants, shall if such land or any portion thereof has been heretofore granted by this state, so far as relates to any land heretofore granted, be absolutely void for all purposes whatever, shall confer no rights whatever, upon the grantee or grantees therein, or those claiming under such grantee or grantees, and shall in no case, and under no circumstances constitute color of title whatsoever to any person whomsoever." Laws 1893, c. 490; Pell's Rev. § 1699.

If, therefore, the land in controversy is included within the boundaries of the Hamilton grant, as it manifestly is, the grant to Vyne is absolutely void for all purposes. If the plaintiff is the owner of an undivided interest in the land, it would seem that he is entitled, to the extent of such interest, to have the relief for which he prays in his bill.

[13, 14] It seems to be well settled that a court of equity has jurisdiction to remove, as a cloud from title, any deed, grant, or other muniment of title, valid upon its face, the invalidity of which can only be shown by extrinsic evidence. It is said:

"Equity interferes to remove clouds upon title, because they embarrass the owner of the property clouded, and tend to impede his free sale and disposition of it. A cloud upon title is, in itself, a title or incumbrance, apparently valid, but in fact invalid. It is something which, nothing else being shown, constitutes an incumbrance upon or a defect in it; something which shows prima facie the right of a third party, either to the whole or some interest in it, or a lien upon it. The doctrine relating to cloud upon title is founded upon true principles of equity jurisprudence, which is not merely remedial, but is also preventive of injustice. If an instrument ought not to be used or enforced, it is against conscience for the party holding the same to retain it, since he can only do so with some sinister or wrongful design. * * * If it is a deed purporting to convey lands, which creates an apparent incumbrance, its existence in an uncanceled state necessarily is calculated to throw a cloud over the title." Note to Busbee v. Macy, 85 N. C. 329, in Remedies by Selected Cases, Mordecai, 184; Rich v. Braxton, 158 U. S. 375, 15 Sup. Ct. 1006, 39 L. Ed. 1022.

[15] In Ogden City v. Armstrong, 168 U. S. 224, 238, 18 Sup. Ct. 98, 103 (42 L. Ed. 444), it is said:

"One branch of equity jurisdiction is the removal of apparent clouds upon the title, which may diminish the market value of the land and possibly threaten the loss of it to the owner. * * * When the illegality or fatal defect does not appear on the face of the record, but must be shown by evidence aliunde, so that the record would make out a prima facie right in one who should become a purchaser, and the evidence to rebut this case may be lost, or become unavailable from death of witnesses, or when the deed given on a sale of the land for the tax would be presumptive evidence of a good title in the purchaser, so that the purchaser might rely upon the deed for a recovery of the land until the irregularities were shown, courts of equity regard the case as coming within their jurisdiction, and have extended relief on the ground that a cloud on the title existed or was imminent." Acord v. West Poc. Corp. [C. C.] 156 Fed. 989.

The case made upon this record comes clearly within the principle announced. The grant to Vyne is regular, and, upon its face, valid

to vest title in him. Its invalidity can only be disclosed by showing that the land granted is within the boundaries of a grant issued more than a century since for 26,000 acres of land. To do this involves immense trouble and expense. The surveys made in this case and the evidence necessary to locate the boundaries of the Hamilton grant, showing that the grant to Vyne is included in it, must have required a large expenditure of money. Until this was done, the claimant under the Vyne grant had an apparently perfect title, and in an action of ejectment by him it would have been very difficult to have successfully resisted a recovery; yet it is manifest, in the light of the evidence and the surveys, that the state parted with its title on December 27, 1792. A decree may be drawn in accordance with this opinion.

It appears that, prior to filing the bill, plaintiff took actual possession of the land, so far as it is capable of being occupied. The evidence tends to show that defendant Leonard Vyne has never been in the actual possession; that he entered into some contract, the exact terms of which are not shown, with defendant Kramer Bros. & Co., a corporation, for the sale of the timber on the land. It is manifest that its chief value consists in the timber. The defendants will be enjoined from setting up said grant, or asserting title thereunder to the land described in the said grant, from the state to Leonard Vyne of February 7, 1906, No. 16,788, as against the plaintiff, and from cutting or removing any timber from said land. Plaintiff will recover his cost.