SLOANE et al. v. KRAMER BROS. & CO. et al.

(District Court, E. D. North Carolina.   March 9, 1916.)

1. COURTS ⬷328(2)—AMOUNT IN CONTROVERSY—REMOVING CLOUD FROM TITLE.
   In a suit to remove a cloud from the title to land, the basis of equitable interference is that defendant is threatening to attack plaintiffs' title and holds some paper writing, invalid because of some defect not apparent upon its face; and hence it would seem that the amount in controversy is the value of the land, and that damages recoverable at law for cutting timber prior to the filing of the bill cannot be added to the value of the land to make the jurisdictional amount.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 890; Dec. Dig. ⬷328(2).]

2. COURTS ⬷256—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.
   Judicial Code (Act Cong. March 3, 1911, c. 231) § 24, 36 Stat. 1091 (Comp. St. 1913, § 991), gives the District Courts jurisdiction of certain actions where the matter in controversy exceeds the sum or value of $3,000. Prior to the adoption of the Judicial Code, the jurisdictional amount was $2,000. Section 299 (section 1276) provides that the repeal of existing laws or the amendment thereof embraced therein shall not affect any act done or right accruing or accrued, or suit or proceeding pending at the taking

---

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

effect thereof, but that such suits and proceedings for causes arising or acts done prior to such date may be commenced and prosecuted within the same time and with the same effect as if such repeal or amendments had not been made. *Held* that, notwithstanding this section, the change in the jurisdictional amount or value applies to suits thereafter brought for acts done or causes arising prior to the taking effect of the Code.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 792; Dec. Dig. ⊚══256.]

3. COURTS ⊚══256—UNITED STATES COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

Statutes changing, increasing, or decreasing the jurisdiction of federal courts, or the amount in controversy necessary to give jurisdiction, will, unless expressly restricted, apply to suits and actions instituted thereafter, without regard to the time the remedial right or cause of action accrued.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 792; Dec. Dig. ⊚══256.]

4. EQUITY ⊚══41—INCIDENTAL RELIEF—DISMISSAL OF BILL.

In a suit to remove a cloud from the title to land and to recover the value of timber cut therefrom, whatever jurisdiction a court of equity had regarding the timber was incidental to the jurisdiction to remove the cloud; and where defendant denied that he claimed any interest in, or right or title to, the land, equity had no jurisdiction.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 116–118; Dec. Dig. ⊚══41.]

In Equity. Suit by Mary E. Sloane and others against Kramer Bros. & Co. and another to remove a cloud from the title to land and for an accounting. Bill dismissed.

Winston & Biggs, of Raleigh, N. C., for plaintiffs.
Aydlett & Simpson, of Elizabeth City, N. C., for defendants.

CONNOR, District Judge. Plaintiffs deraign title to the land in controversy from the same source, and largely through the same chain, as did the plaintiff in Tilghman Johnston v. Kramer Bros. & Co. (D. C.) 203 Fed. 733, in which the title to a fractional interest ($^{11}/_{126}$) of the tract described in the bill herein was involved. It is unnecessary to do more than refer to the record and decree in that case, so far as plaintiffs' title is concerned. While defendants, in their answer, deny plaintiffs' title, they do not set up or claim that they own, or have any title to, the land. In that case, as in this, it appeared that defendant Leonard Vyne, on February 7, 1906, obtained from the state a grant for the tract containing 295 acres chiefly valuable for the timber standing upon it. For the reasons set out in the opinion in that case, it was held that the grant was void, conveying no title, and not being color of title. Pell's Rev. § 1699. No appeal was taken from the decree. This bill is filed by plaintiffs, who claim title to seven-eighths undivided interest in the same land, asking that, as to them and their title, the grant be declared void, and that they have an accounting for the timber cut therefrom by defendants Kramer Bros. & Co., who admit that they cut and removed 308,000 feet of timber under a contract with their codefendant Vyne. They never claimed or asserted any title to the land. The decree in the case referred to was filed March 10, 1913. This bill was filed May 5, 1914.

Defendants challenge the jurisdiction of the court by a denial of plaintiffs' allegations "that the said tract of land &ast; &ast; &ast; was and is of a value in excess of $3,000." Evidence was introduced in regard to the value of the land, both at the date of filing the bill, after the timber had been cut and removed, and before that time. As usual, there is marked difference between the witnesses in their estimates of value. It is manifest that, without the timber, the land is of inconsiderable value; the lowest estimate being $1 and the highest $2 per acre. It is conceded that Kramer Bros. & Co. agreed to pay $2,000 for the timber, and they settled with Vyne by paying $950. While there are several estimates respecting the quantity of marketable timber now on the land, and its stumpage value, by witnesses more or less reliable, I am unable to find that the land, with the timber standing on it, at the date of filing the bill, was worth, or is now worth, so much as $2,000. I am of the opinion that, before the timber was cut and removed by defendants Kramer Bros. & Co., the land, with the timber, was worth more than $2,000, but that its value was reduced to less than that sum by the removal of the 308,000 feet of timber. If, however, the damage done by the trespass, for which plaintiffs demand judgment against both defendants Vyne and Kramer Bros. & Co., is, for the purpose of fixing the value, "of the matter in controversy," to be added to the value of the land, the two would exceed the sum of $2,000.

[1] Plaintiffs insist that the change in the jurisdictional value "of the matter in controversy" by Judicial Code 1912, § 24, from $2,000 to $3,000, does not apply to this case. This contention is based upon the language found in section 299 of the Code. Assuming pro hac vice that the jurisdiction in respect to the value "of the matter in controversy" is fixed by section 24 of the Judicial Code at $3,000, there is but one course to be pursued. The bill should be dismissed. If, however, by reason of the language of section 299, the jurisdictional amount is $2,000, it becomes material to ascertain the standard or test by which the value of "the matter in controversy" is to be fixed—whether the value of the land, the title to which is in controversy, at the date the bill is filed, fixes the jurisdiction, or whether to such value the amount claimed for the trespass is to be added.

Questions more or less analogous have been discussed and decided in cases wherein the jurisdiction of the Supreme Court to entertain writs of error or appeals was involved. In Vicksburg R. R. v. Smith, 135 U. S. 195, 10 Sup. Ct. 728, 34 L. Ed. 95, plaintiff claimed to be the owner of 186 acres, of the value of $10,000; but only 40 acres, of a value less than $2,000, was in possession of the defendant. Upon a motion to dismiss, the court said:

"The value of that part of land is shown clearly to be less than $2,000, and this is conclusive of our jurisdiction."

In Elgin v. Marshall, 106 U. S. 578, 1 Sup. Ct. 484, 27 L. Ed. 249, it is said:

"Undoubtedly Congress, in establishing a rule for determining the appellate jurisdiction of this court, among other reasons of convenience that dictated the adoption of the money value of the matter in dispute, had in view that it was precise and definite. &ast; &ast; &ast; The language of the rule limits, by its

own force, the required valuation to the matter in dispute in the particular action, or suit in which the jurisdiction is invoked, and it plainly excludes, by a necessary implication, any estimate of value as to any matter not actually the subject, of that litigation."

In response to the suggestion that certain elements of value should be included in fixing the jurisdiction, it is said that the rule is arbitrary, as it is based upon a fixed amount representing pecuniary value.

"But, as it draws the boundary line of jurisdiction, it is to be construed with strictness and rigor. As jurisdiction cannot be conferred by consent of parties, but must be given by the law, so it ought not to be extended by doubtful constructions. * * * It is impossible to foresee into what mazes of speculation and conjecture we may be led by a departure from the simplicity of the statutory provision."

In Smith v. Adams, 130 U. S. 167, 175, 9 Sup. Ct. 566, 569, 32 L. Ed. 895, it is said:

"A suit to quiet the title to parcels of real property, or to remove a cloud therefrom, by which their use and enjoyment by the owner are impaired, is brought within the cognizance of the court, under the statute, only by the value of the property affected."

In Woodside v. Ciceroni, 93 Fed. 1, 35 C. C. A. 177 (C. C. A. 9th Cir.), Judge Gilbert says:

"In a suit to quiet title, or to remove a cloud therefrom, it is not the value of the defendant's claim which is the amount in controversy, but it is the whole of the real estate to which the claim extends. It would be impossible, for instance, to estimate the value of an interest claimed under a forged or fraudulent instrument. It is the property to which such an instrument relates that is the subject of the controversy."

In Hennesy v. Herrmann (C. C.) 89 Fed. 669, the subject-matter of the suit was a trade-mark. Judge Hawley said that it was the value of the trade-mark, and not the amount of damages sustained by its infringement, which fixed the jurisdiction. In Parker v. Morrill, 106 U. S. 1, 1 Sup. Ct. 14, 27 L. Ed. 72, a suit for partition and to remove cloud from title, it appeared that only one-twentieth of the entire tract was "in controversy" on the appeal, and this the court found to be of a value less than that which conferred jurisdiction. The appeal was for this reason dismissed. Mr. Foster says:

"In a suit to quiet title and remove a cloud therefrom, the test is the value of plaintiff's property, affected by the adverse claim." Fed. Prac. 52.

He cites, among other cases, Felch v. Travis (C. C. E. D. N. C.) 92 Fed. 210, decided by Judge Purnell. The question involved here was not presented. In view of the basis upon which courts of equity originally took jurisdiction of bills to remove cloud from title to land —that is, the necessity for granting relief because the plaintiff was in possession and could not resort to an action at law—it is doubtful whether a decree calling defendant to an accounting for a trespass was decreed. If defendant had committed a trespass, cut and removed timber, the plaintiff had an adequate remedy at law by an action for damages. If there had been an ouster, of course, plaintiff had his action of ejectment. The basis of equitable interference was that

defendant was threatening to attack plaintiffs' title; that he held some paper writing which was, in truth, invalid because of some defect, not apparent upon its face; that it had been procured by fraud, or was a forgery, etc. U. S. v. Wilson, 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110. Mr. Pomeroy says:

"The relief being granted on the principle quia timet; that is, that the deed, or other instrument or proceeding, constituting the cloud, may be used to injuriously or vexatiously embarrass, or affect, plaintiff's title." Equity, § 1398.

The relief was usually awarded by a decree declaring the instrument, adjudged to be a cloud upon the plaintiff's title, void and directing it to be canceled, or enjoining the defendant from setting it up or using it in an action at law for the possession. The jurisdiction was exercised because of necessity; plaintiff, whose title was put in jeopardy, having no remedy at law. The court restricted it to relief against deeds or instruments which were not void on their face, but could be shown to be so only by extrinsic evidence; and while such is now the general rule, courts of equity have, in modern times, extended relief in cases where formerly it would have been denied. Pomeroy, Eq. § 1399; Fetter, Eq. 316.

In Johnston v. Kramer Bros., supra, the question of value, as affecting the jurisdiction, was not raised or considered. At the date the bill was filed, the jurisdictional value was fixed at $2,000. It would seem that such damage as the plaintiff has sustained by reason of the trespass by the defendants should be recovered in an action at law, unless there was some equitable element, which does not appear upon the record. Upon the reason of the thing, and in so far as they are analogous, the decisions cited would tend to show that the "matter in controversy" is the land, the title to which is affected by the instrument asked to be canceled, and this cannot be increased to bring it within the jurisdictional value by adding a demand for the value of the timber cut.

In this case the plaintiffs had, upon their own showing, a perfect legal remedy for the trespass committed by defendants Kramer Bros. & Co., under the contract with Vyne. If, for any reason, it was necessary to remove the cloud from their title, by a decree adjudging the grant from the state to be void, they were entitled to invoke the jurisdiction of this court in equity for that purpose. However this may be, the defendants insist that the plaintiffs have failed to make good their jurisdictional averment that the land, at the date of filing the bill, was of "a value in excess of $3,000," and this is true.

[2, 3] The resourceful counsel for plaintiffs insist that this allegation was unnecessary, and inadvertently made; that the jurisdictional value is $2,000, because of the provisions of section 299 of the Judicial Code; that—

"the repeal of existing laws, or the amendments thereof, embraced in this act, shall not affect any act done, or any right accruing or accrued, or any suit or proceeding * * * pending at the time of the taking effect of this act, but all such suits and proceedings, * * * for causes arising or acts done prior to such date, may be commenced and prosecuted within the same

time, and with the same effect, 'as if said repeal or amendments had not been made."

That Congress may change, increase, or decrease the jurisdiction of federal courts, or the value of "the matter in controversy," is not doubted; and that statutes enacted for that purpose will, unless expressly restricted, apply to suits and actions instituted thereafter, without regard to the time the remedial right or cause of action accrued, is equally clear. Such statutes apply to the remedies, which, with very few and limited exceptions, are within the control of the legislative department. There can be no doubt of the power of Congress to abolish the Circuit Courts and assign to the District Courts jurisdiction to hear and determine a suit in equity, wherein the right accrued prior to the act. The first part of the saving clause in the Code of 1912 is quite comprehensive, providing that the repeal of an amendment to "existing laws * * * embraced in this act" shall not affect any act done or right accruing or accrued." This language, if not restricted by the later clauses, would exclude such "acts" and "rights" from the operation or effect of the Code. They would, in all respects, be subject to the laws of procedure in force on January 1, 1912—be prosecuted in the same courts, etc.

That Congress did not so intend is manifested by the provision that "suits and proceedings for causes arising or acts done prior to such date may be commenced and prosecuted within the same time and with the same effect as if said repeal or amendment had not been made," thus removing suits and proceedings for such causes arising or acts done from the effect of statutes of limitations prescribed by the Code or changes in the method of procedure. If Congress had intended to make the change in the jurisdictional amount or value of the matter in controversy apply only to acts done or causes arising thereafter, it would have so provided in express terms. If the section is construed as plaintiffs contend it should be, the District Court would have no jurisdiction of this case. Prior to the enactment of the Code jurisdiction was vested in the Circuit Court, which is by the Code abolished, and jurisdiction conferred upon the District Court. I am of the opinion that the jurisdictional value was correctly alleged by the plaintiff at $3,000, but that, it being denied, the proof does not sustain the allegation, and the court is without jurisdiction.

[4] While the bill must be dismissed for want of jurisdiction, it would seem that in no event could a decree be made as prayed for. Defendant Leonard Vyne, in his answer, paragraph 12, denies that he is in possession of the land, and avers that he claims no interest therein, and no right or title thereto. Whatever interest he had he conveyed prior to the filing of the bill. On the hearing he introduces a deed executed by himself and wife, and duly registered, to the Mecklenburg Realty Company, bearing date January 31, 1908, and recorded in Perquimans county March 2, 1908. On his examination he says that, after the decision of the Tilghman Johnston Case, he claimed no title—thought his title good until the decree in that case. In this condition of the case there is nothing in controversy, except a claim against Kramer Bros. & Co. and Vyne for cutting and removing tim-

ber, and for this plaintiffs have an adequate remedy at law. Whatever jurisdiction the court may have had in regard to the timber was incidental to the jurisdiction to remove a cloud from the title; with the disappearance of this, the incident goes with it.

A decree may be drawn dismissing the bill at plaintiffs' cost.